IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOMOKO FUNAYAMA, | : | |
| | : | CIVIL ACTION NO. 08-CV-5599 |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| NICHIA AMERICA CORPORATION, and | : | |
| SHIGEO KUBONIWA, | : | |
| | : | |
| Defendants. | : | |

**FIRST AMENDED COMPLAINT - JURY TRIAL DEMANDED**

**I.     INTRODUCTION**

1.      Plaintiff Tomoko Funayama brings this action for equitable relief and monetary damages to redress the deprivation of civil rights secured to her by Title VII of the Civil Rights Act of 1964 ["Title VII"], 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ["ADEA"], the Pennsylvania Human Relations Act (PHRA), 43 P.S. 951 et seq., and 42 U.S.C. § 1981, while she was an employee of Defendant Nichia America Corporation ("Nichia").  She files this her amended complaint as a mater of right prior to the filing of the answer by Defendant Nichia.  The basis for the filing of an amended complaint is the addition of claims brought pursuant to federal and state law pursuant to plaintiff's expected receipt of a right to sue letter by the EEOC in the near future and notice of the closing of its file by the PHRC.  Specifically, she alleges that she was subjected to hostile work environment sexual harassment, and that she was not given a promotion and that she was demoted and then ultimately constructively discharged and that the defendant's actions caused her mental distress and humiliation, and loss of employment and compensation.  She seeks back pay, compensatory damages, punitive damages, liquidated damages, front pay or reinstatement, attorneys fees, expenses and costs of this action.

## II.    <u>JURISDICTION</u>

2.    Jurisdiction of this civil rights action is conferred on this Court by 42 U.S.C. §§ 717(c) and 706, and 28 U.S.C. §§ 1343 and 1331.  The Court's supplemental and pendent party jurisdiction under 28 U.S.C. § 1367 is invoked over Ms. Funayama's claims under the PHRA, <u>et seq</u>.

3.    Venue herein is proper under 28 U.S.C. § 1391(b) and (c), and 42 U.S.C. § 2000e-5(f)(3) as the acts complained of herein all occurred within this judicial district.

## III.    <u>PARTIES</u>

4.    Plaintiff Tomoko Funayama is a permanent resident of the U.S. and subjects herself to the jurisdiction of this court.

5.    Defendant Nichia America Corporation is now, and was at all relevant times, a private corporation organized under the laws of the Commonwealth of Pennsylvania and conducting business at 3775 Hempland Road, Mountville, PA.  At all relevant times Defendant has had at least 15 employees and is capable of being sued under Title VII and is subject to the jurisdiction of this court under that statute.

6.    Shigeo Kuboniwa is an adult permanent resident of the United States, a resident of the Commonwealth of Pennsylvania and, during all times relevant herein, employed by the Defendant as its President at the Mountville, PA office and is therefore subject to the jurisdiction of the court.

## IV.    <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

7.    A charge of discrimination was timely filed with the EEOC and the Pennsylvania Human Relations Commission (PHRC).  The PHRC began an investigation into plaintiff's

claims.   Plaintiff has provided the PHRC and EEOC with a copy of the suit filed in this case.

Upon information and belief the PHRC and EEOC will discontinue their investigations and close

their files administratively pursuant to agency policies.  The EEOC will issue a right to sue letter

in the near future.

**V.    STATEMENT OF FACTS**

8.    Plaintiff was hired by Nichia on April 3, 1995 as the Business Coordinator/

Accountant.

9.    Plaintiff was promoted to Assistant Financial Manager in January 1998 and then

was promoted to Financial Manager In January 2004.

10.    Plaintiff is a 41 year old woman of Japanese/Asian ancestry.

11.    Her rate of pay was $62,530 per year.

12.    Takanori "Tim" Ujike, the General Manager of Finance and Accounting of

Defendant's Mountville office, is a Japanese male.

13.    Plaintiff's job and Mr. Ujike's job were substantially equal with respect to skill,

effort and responsibility as of September 2003.  Plaintiff partnered with Mr. Ujike in the

performance of his job duties.  She was the Financial Manager, who supervised directly all the

staff in the Accounting Department and performed all of Mr. Ujike's duties but inventory and

accounts receivable/credit management.  Mr. Ujike received substantively more in compensation

than plaintiff did.

14.    Plaintiff's race is Asian and the race of her husband, Charles Carson, is

Caucasian.

15.    In June 2006 President Kuboniwa remarked at work that he found it "hideous'

that plaintiff was becoming more Americanized.  It was clear from the context of the

conversation that the comment referred to plaintiff's marriage to a Caucasian man.  Kuboniwa

had previously made such comments periodically throughout plaintiff's employment but this was

the first time he made reference to displeasure over the race of her husband.

16.     President Kuboniwa would not have made this remark if plaintiff's husband was

Japanese.

17.     For an extensive period of time plaintiff was harassed at work.

18.     In the summer of 1999 President Kuboniwa grabbed plaintiff's breast and forced a

kiss on her.  Kuboniwa then told plaintiff he wanted to come up to her apartment.  She refused

his request.

19.     In 2001 Kuboniwa and plaintiff traveled to Philadelphia to the office of USCIS

(formerly INS) as part of their green card application process.  They originally had reserved two

rooms for the trip.  On the way to there Kuboniwa suggested to plaintiff that they could reserve

one hotel room for the night instead of two.  Plaintiff declined and they stayed in their separate

rooms for the night.

20.     In 2003 Kuboniwa gave plaintiff a Japanese novel and asked her to read it over

the weekend.  Plaintiff was shocked when she read it to learn that it was extremely sexually

explicit and erotic and graphic.  When she returned it to Kuboniwa he asked her what she

thought of it.  She said it contained too much information.  His comment was that she just didn't

understand literature.

21.     In 2003 President Kuboniwa ordered plaintiff to go to his apartment to bring him

some painkillers.  He had undergone an operation to repair a hernia.  When plaintiff arrived she

brought the medication inside his apartment.  Kuboniwa called out to her and ordered her to

bring the medication to his bedroom.  He was dressed in nothing but his underwear when

plaintiff entered his bedroom.

22.      Beginning in 1999 Kuboniwa would regularly ask plaintiff if he could come over to her apartment to which she always declined.

23.      In 2003 Kuboniwa's supervisor and the Executive Vice President of Nichia Corporation, Mr. Toboru Tazaki, came to the U.S. for a business trip.  Tazaki gave a talk to the managers at the Defendant's facility during the day.   Kuboniwa decided that the group of managers would go to the York "Hooters" for dinner.  Plaintiff indicated that it was not appropriate to attend "Hooters" for a business event.  She was told that she did not have to attend if she did not wish to do so.  Plaintiff attended the event anyway because she did not want to miss the opportunity to network with Tazaki and the other managers but she was very uncomfortable, especially when the managers, all of whom were male Japanese nationals, commented on the waitresses' bodies in Japanese.

**24.**      From 2003 to the end of her employment on July 23, 2008, President Kuboniwa groped plaintiff's breasts, or near her breasts, on a regular basis.

**25.**      On June 13, 2006, Tadashi Fujikura, Defendant's Executive Vice President, sent plaintiff an e-mail about the Toyota sexual harassment case that was in the newspapers. Mr. Fujikura described the Japanese female complainant in the case as a pretty woman who makes men horny.

26.      On November 16, 2007, President Kuboniwa, gave plaintiff a Japanese magazine to read. The magazine contained very erotic and sexually explicit expressions and illustrations of female genital and oral sex.

27.      On November 17, 2007, President Kuboniwa berated plaintiff for including children in the company holiday event.  Kuboniwa verbally attacked plaintiff on this issue in a

violent and aggressive manner. He told her that because she was a woman and had just had a child she was "to blame" for the event. The Detroit office always had a family holiday event and there were no issues with children attending that event. Kuboniwa would not have treated a male in this threatening and disrespectful manner.

28.    Plaintiff reported the incident to her supervisor, Takanori "Tim" Ujike, General Manager of Finance and Accounting. Tim said it was a personal matter and refused to do anything about it.

29.    In November 2007, plaintiff submitted an Employee Self-Assessment evaluation to Mr. Ujike. She stated that one of her accomplishments was that she had improved the balance between her work and personal life. Mr. Ujike said that it was an inappropriate remark or accomplishment.

30.    On January 3, 2008, President Kuboniwa told plaintiff that her salary was maxed out. He also stated that she should he satisfied with this as she was a mother and should be happy and satisfied with raising her child rather then being dedicated to career development.

31.    The harassment was severe in that she was physically groped by her supervisor, the president of the company. The harassment was regular and pervasive because it occurred frequently from 1999 on. The incidents described herein were only the most recent examples of the harassment.

32.    A reasonable woman would have considered the treatment plaintiff experienced to be offensive.

33.    Plaintiff was detrimentally affected because she was subjected to a hostile work environment that was inappropriate and offensive to her. She was under a great amount of stress and her health and emotional well being were adversely affected by these actions.

34.     On March 3, 2003 Plaintiff complained to Deborah Masinos, in Human Resources, about the harassment by Kuboniwa.  She explained how he had been physically and verbally harassing her and how inappropriate his conduct was.  Masinos responded to plaintiff that there wasn't anything that she (Masinos) could do and that plaintiff should look for a job with another company.

35.     On May 7, 2008, without prior notice, plaintiff was informed by President Kuboniwa that her employment would be terminated when the Mountville Headquarters closed at the end of June 2009.   He told her that her position would be given to Brian Marshall, a male Assistant Financial Manager who reported to plaintiff, when the Mountville Headquarters would be transferred to Detroit, MI in June 2009.  President Kuboniwa told plaintiff that he wanted her to stay until the very end when the Mountville Headquarters would close.

36.     President Kuboniwa also stated that he and Tadashi Fujikura, Defendant's Executive Vice President, did not want any Japanese in the Detroit Accounting Department for Nichia America.

37.     Brian Marshall is a significantly younger caucasian male in his late 20's, with only three years experience in accounting.

38.     Americans and males would not have been treated in this manner.  Kuboniwa viewed plaintiff as a stereotypical Japanese female who would remain submissive and not complain.

39.     On May 8, 2008, President Kuboniwa came to plaintiff's desk and asked if she was cold.  Plaintiff answered in the negative to which Kuboniwa responded that he could not believe that she was not cold.  Plaintiff said she wasn't cold because she had gained about ten pounds in the last year.  He said that plaintiff was still nice and slim yet not too skinny. He also

said that he would not feel a woman was sexy unless the woman's body was like hers. He said that plaintiff had the perfect body.

40.    Later that day Kuboniwa came to plaintiff's desk at 4:50 pm and ordered her to drive him to pickup his Lincoln at the local Lancaster dealership.  During the drive he told plaintiff that Mr. Marshall would perform her job well for the company when he went to the Detroit office.  He also said that if there were any help needed in the Detroit accounting department that Nichia Japan would send a young male Japanese person from Japan to help out.

41.    Plaintiff was qualified for the position because she had worked successfully for Defendant Nichia for 13 years and had been regarded as one of its key employees.  Her job performance during that time was excellent.

42.    On May 28, 2008 plaintiff filed a complaint of discrimination with the Pennsylvania Human Relations Commission and the EEOC in which she alleged that Nichia had discriminated against on the basis of her gender, age and national origin.  Upon information and belief Defendant Nichia was notified in late May that plaintiff was in the process of filing a charge of discrimination, or had filed a charge of discrimination, against it.  Plaintiff later filed an amended complaint on June 10, 2008.

43.    On May 28, 2008, President Kuboniwa called plaintiff into his office and informed her that Takanori "Tim" Ujike, was resigning effective August 14, 2008.  Plaintiff was also informed that instead of losing her job at the end of June 2009 she would be needed for the transition to the Detroit office.

44.    Her new duties, responsibilities, compensation and title were not discussed or explained to her.  She never received any further information on her new position.

45.    On June 25, 2008 plaintiff asked Kuboniwa to meet with her to discuss the new

position.  He refused to meet with her.  Instead he called her into a meeting with Brian Marshall

and Ujike.  Plaintiff was informed that she would no longer be supervising Mr. Marshall and that

effective August 14, 2008, Marshall would take over Ujike's job duties.  Kuboniwa then

reassigned plaintiff to non-managerial clerical duties, essentially demoting her.  When she

complained to him about his decision his response was that she should "just start over from the

beginning."  Marshall did not seem surprised to hear this news.

46.    The following day Ujike encouraged plaintiff to look at a career change website

that he had located.  He told her that the Detroit managers did not like her and that they were

troubled that she had been offered a position in Detroit.

47.    On June 27, 2008, Kuboniwa informed plaintiff that the company had been

notified by the EEOC that she had filed a complaint against it and that they didn't know what to

do with her.

48.    As a result of the treatment by Defendant Nichia and Kuboniwa plaintiff felt she

had no other option but to resign her employment, which she did on July 28, 2008.

**49.**    Plaintiff timely filed a charge of discrimination on the basis of retaliation on July

1, 2008 and then an amended charge on August 27, 2008.

## COUNT I

## RACE/NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

50.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 49 as

though fully set forth herein.

51.    The decision not to transfer plaintiff to the Detroit office when the Mountville

office closed and the decision not to provide her with Ujike's position upon his resignation, and

the decision to demote, resulting in her constructive discharge were all the result of intentional

discrimination on the basis of plaintiff's race and/or national origin and constituted a violation of plaintiff's federal civil rights as guaranteed by 42 U.S.C. § 1981.

52.    Plaintiff suffered damages as a result of Defendant Nichia's intentional discrimination, including emotional distress.

53.    Defendant Nichia's actions were willful and wanton and exhibit malice and/or reckless indifference to plaintiff's federally protected civil rights under 42 U.S.C. § 1981, and plaintiff is therefore entitled to receive punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)    Awarding her lost wages, in the form of back pay, including lost fringe benefits;

(b)    Awarding her front pay;

(c)    Awarding her compensatory damages;

(d)    Awarding her punitive damages;

(e)    Awarding her the costs of this action, together with reasonable attorney's fees; and

(f)    granting such other relief as the Court deems necessary and appropriate.

## COUNT II

## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

54.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 53 as though fully set forth herein.

55.    Plaintiff's complaint to the EEOC/PHRC constituted protected activity.

56.    Plaintiff suffered unlawful retaliation when Nichia refused to provide her with Ujike's position upon his resignation, and then demoted her, resulting in her constructive

discharge for having filed a complaint about the race and/or national origin discrimination she had been subjected to.

57.     Said retaliation was intentional and constitutes a violation of plaintiff's federal civil rights as guaranteed by 42 U.S.C. § 1981.

58.     Plaintiff suffered damages as a result of Defendant Nichia's unlawful discriminatory conduct including emotional distress.

59.     Defendant Nichia's actions were willful and wanton and exhibit malice and/or reckless indifference to plaintiff's federally protected civil rights under 42 U.S.C. § 1981 and plaintiff is therefore entitled to receive punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)     Awarding her lost wages, in the form of back pay, including lost fringe benefits;

(b)     Awarding her front pay.

(c)     Awarding her compensatory damages;

(d)     Awarding her punitive damages;

(e)     Awarding her the costs of this action, together with reasonable attorney's fees; and

(f)     granting such other relief as the Court deems necessary and appropriate.

## COUNT III

## GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

60.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 59 as though fully set forth herein.

61.     The decision not to transfer plaintiff to the Detroit office when the Mountville

office closed and the decision not to provide her with Ujike's position upon his resignation, and the decision to demote her, resulting in her constructive discharge were all the result of intentional discrimination on the basis of plaintiff's gender and constituted a violation of plaintiff's federal civil rights as guaranteed by Title VII.

62.    Plaintiff suffered damages as a result of Defendant Nichia's intentional discrimination.

63.    Defendant Nichia's actions were willful and wanton and exhibit malice and/or reckless indifference to plaintiff's federally protected civil rights under Title VII of the Civil Rights Act of 1964, as Amended by the Civil Rights Act of 1991, and plaintiff is therefore entitled to receive punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)    Awarding her lost wages, in the form of back pay, including lost fringe benefits;

(b)    Awarding her front pay.

(c)    Awarding her compensatory damages;

(d)    Awarding her punitive damages;

(e)    Awarding her the costs of this action, together with reasonable attorney's fees; and

(f)    granting such other relief as the Court deems necessary and appropriate.

## COUNT IV

## GENDER DISCRIMINATION IN VIOLATION OF THE PHRA

64.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 63 as though fully set forth herein.

65.    The decision not to transfer plaintiff to the Detroit office when the Mountville office closed and the decision not to provide her with Ujike's position upon his resignation, and the decision to demote her, resulting in her constructive discharge were all the result of intentional discrimination on the basis of plaintiff's gender and constituted a violation of plaintiff's civil rights as guaranteed by the PHRA.

66.    Plaintiff suffered damages as a result of Defendant Nichia's intentional discrimination.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)    Awarding her lost wages in the form of back pay, including lost fringe benefits;

(b)    Awarding her front pay,

(c)    Awarding her compensatory damages;

(d)    Awarding her the costs of this action, together with reasonable attorney's fees; and

(e)    granting such other relief as the Court deems necessary and appropriate.

## COUNT V

## AGE DISCRIMINATION IN VIOLATION OF ADEA

67.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 66 as though fully set forth herein.

68.    The decision not to transfer plaintiff to the Detroit office when the Mountville office closed and the decision not to provide her with Ujike's position upon his resignation, and the decision to demote her, resulting in her constructive discharge were all the result of intentional discrimination on the basis of plaintiff's age and constituted a violation of plaintiff's

federal civil rights as guaranteed by the ADEA.

69.    Plaintiff suffered damages as a result of Defendant Nichia's actions.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)    Awarding her lost wages in the form of back pay, including lost fringe benefits;

(b)    Awarding her front pay,

(c)    Awarding her liquidated damages;

(d)    Awarding her the costs of this action, together with reasonable attorney's fees; and

(e)    granting such other relief as the Court deems necessary and appropriate.

## COUNT VI

## AGE DISCRIMINATION IN VIOLATION OF THE PHRA

70.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 71 as though fully set forth herein.

71.    The decision not to transfer plaintiff to the Detroit office when the Mountville office closed and the decision not to provide her with Ujike's position upon his resignation, and the decision to demote her, resulting in her constructive discharge were all the result of intentional discrimination on the basis of plaintiff's age and constituted a violation of plaintiff's civil rights as guaranteed by the PHRA.

72.    Plaintiff suffered damages as a result of Defendant Nichia's intentional discrimination.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)    Awarding her lost wages in the form of back pay, including lost fringe benefits;

(b)    Awarding her front pay,

(c)    Awarding her compensatory damages;

(d)    Awarding her the costs of this action, together with reasonable attorney's fees; and

(e)    granting such other relief as the Court deems necessary and appropriate.

## COUNT VII

## RACE/NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

73.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 72 as though fully set forth herein.

74.    The decision not to transfer plaintiff to the Detroit office when the Mountville office closed and the decision not to provide her with Ujike's position upon his resignation, and the decision to demote her, resulting in her constructive discharge were all the result of intentional discrimination on the basis of plaintiff's race and/or national origin and constituted a violation of plaintiff's federal civil rights as guaranteed by Title VII.

75.    Plaintiff suffered damages as a result of Defendant Nichia's intentional discrimination, including emotional distress.

76.    Defendant Nichia's actions were willful and wanton and exhibit malice and/or reckless indifference to plaintiff's federally protected civil rights under Title VII, and plaintiff is therefore entitled to receive punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)    Awarding her lost wages, in the form of back pay, including lost fringe benefits;

15

(b)     Awarding her front pay;

(c)     Awarding her compensatory damages;

(d)     Awarding her punitive damages;

(e)     Awarding her the costs of this action, together with reasonable attorney's fees; and

(f)     granting such other relief as the Court deems necessary and appropriate.

### COUNT VIII

### RACE/NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF PHRA

77.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 76 as though fully set forth herein.

78.     The decision not to transfer plaintiff to the Detroit office when the Mountville office closed and the decision not to provide her with Ujike's position upon his resignation, and the decision to demote her, resulting in her constructive discharge were all the result of intentional discrimination on the basis of plaintiff's race and/or national origin and constituted a violation of plaintiff's federal civil rights as guaranteed by the PHRA.

79.     Plaintiff suffered damages as a result of Defendant Nichia's intentional discrimination, including emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)     Awarding her lost wages, in the form of back pay, including lost fringe benefits;

(b)     Awarding her front pay;

(c)     Awarding her compensatory damages;

(d)     Awarding her the costs of this action, together with reasonable attorney's fees;

and

(f)      granting such other relief as the Court deems necessary and appropriate.

## COUNT IX

### RETALIATION IN VIOLATION OF TITLE VII

80.      Plaintiff Incorporates by reference the allegations of paragraphs 1 through 79 as though fully set forth herein.

81.      Plaintiff's complaint to the EEOC/PHRC constituted protected activity.

82.      Plaintiff experienced unlawful retaliation when Nichia refused to provide her with Ujike's position upon his resignation, and then demoted her, resulting in her constructive discharge for having filed a complaint about the race, and/or national origin, and/or gender discrimination she had been subjected to.  Plaintiff suffered damages as a result of the unlawful retaliation.

83.      Said retaliation was intentional and constitutes a violation of plaintiff's federal civil rights as guaranteed by Title VII.

84.      Defendant Nichia's actions were willful and wanton and exhibit malice and/or reckless indifference to plaintiff's federally protected civil rights under Title VII of the Civil Rights Act of 1964, as Amended by the Civil Rights Act of 1991, and plaintiff is therefore entitled to receive punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)      Awarding her lost wages, in the form of back pay, including lost fringe benefits;

(b)      Awarding her front pay.

(c)      Awarding her compensatory damages;

(d)    Awarding her punitive damages;

(e)    Awarding her the costs of this action, together with reasonable attorney's fees; and

(f)    granting such other relief as the Court deems necessary and appropriate.

## COUNT X

## RETALIATION IN VIOLATION OF PHRA

85.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 84 as though fully set forth herein.

86.    Plaintiff's complaint to the EEOC/PHRC constituted protected activity.

87.    Plaintiff experienced unlawful retaliation when Nichia refused to provide her with Ujike's position upon his resignation, and then demoted her, resulting in her constructive discharge for having filed a complaint about the race, and/or national origin, and/or gender discrimination she had been subjected to.

88.    The actions of Defendant Nichia as set forth above, which were intentional, violated plaintiff's right to be free from retaliation as guaranteed by the PHRA.  Plaintiff suffered damages as a result of Defendant Nichia's actions.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)    Awarding her lost wages in the form of back pay, including lost fringe benefits;

(b)    Awarding her front pay,

(c)    Awarding her compensatory damages;

(d)    Awarding her the costs of this action, together with reasonable attorney's fees; and

18

(e)     granting such other relief as the Court deems necessary and appropriate.

## COUNT XI

## RETALIATION IN VIOLATION OF ADEA

89.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 88 as though fully set forth herein.

90.     Plaintiff's complaint to the EEOC/PHRC constituted protected activity.

91.     Plaintiff suffered unlawful retaliation when Nichia refused to provide her with Ujike's position upon his resignation, and then demoted her, resulting in her constructive discharge for having filed a complaint about the age discrimination she had been subjected to.

92.     The actions of Defendant Nichia as set forth above, which were intentional, violated plaintiff's right to be free from retaliation as guaranteed by the ADEA.  Plaintiff suffered damages as a result of Defendant Nichia's actions.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)     Awarding her lost wages in the form of back pay, including lost fringe benefits;

(b)     Awarding her front pay,

(c)     Awarding her liquidated damages;

(d)     Awarding her the costs of this action, together with reasonable attorney's fees; and

(e)     granting such other relief as the Court deems necessary and appropriate.

## COUNT XII

## RETALIATION IN VIOLATION OF PHRA

93.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 92 as though fully set forth herein.

94.    Plaintiff's complaint to the EEOC/PHRC constituted protected activity.

95.    Plaintiff suffered unlawful retaliation when Nichia refused to provide her with Ujike's position upon his resignation, and then demoted her, resulting in her constructive discharge for having filed a complaint about the age discrimination she had been subjected to.

96.    The actions of Defendant Nichia as set forth above, which were intentional, violated plaintiff's right to be free from retaliation as guaranteed by the PHRA.  Plaintiff suffered damages as a result of Defendant Nichia's actions.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)    Awarding her lost wages in the form of back pay, including lost fringe benefits;

(b)    Awarding her front pay,

(c)    Awarding her liquidated damages;

(d)    Awarding her the costs of this action, together with reasonable attorney's fees; and

(e)    granting such other relief as the Court deems necessary and appropriate.

**COUNT XIII**

**GENDER DISCRIMINATION IN VIOLATION OF TITLE VII**
**(SEXUAL HARASSMENT)**

97.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 96 as though fully set forth herein.

98.    The harassment Plaintiff was subjected to by Defendant Kuboniwa was pervasive and/or severe and was based upon plaintiff's gender.

20

99.     The harassment detrimentally affected Plaintiff and was such as would detrimentally affect a reasonable woman in her position.

100.     Because the harassment was perpetrated by the president of the company Defendant Nichia is liable under Title VII.

101.      Plaintiff suffered damages as a result of Defendant Nichia's intentional discrimination.

102.     Defendant Nichia's actions were willful and wanton and exhibit malice and/or reckless indifference to plaintiff's federally protected civil rights under Title VII of the Civil Rights Act of 1964, as Amended by the Civil Rights Act of 1991, and plaintiff is therefore entitled to receive punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)     Awarding her lost wages, in the form of back pay, including lost fringe benefits;

(b)     Awarding her front pay.

(c)     Awarding her compensatory damages;

(d)     Awarding her punitive damages;

(e)     Awarding her the costs of this action, together with reasonable attorney's fees; and

(f)     granting such other relief as the Court deems necessary and appropriate.

## COUNT XIV

### GENDER DISCRIMINATION IN VIOLATION OF THE PHRA
### (SEXUAL HARASSMENT)

103.      Plaintiff incorporates by reference the allegations of paragraphs 1 through 102 as though fully set forth herein.

104.    The harassment Plaintiff was subjected to by Defendant Kuboniwa was pervasive and/or severe and was based upon plaintiff's gender.

105.    The harassment detrimentally affected Plaintiff and was such as would detrimentally affect a reasonable woman in her position.

106.    Because the harassment was perpetrated by the president of the company Defendant Nichia is liable under the PHRA.

107.    Plaintiff suffered damages as a result of Defendant Nichia's intentional discrimination.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)    Awarding her lost wages in the form of back pay, including lost fringe benefits;

(b)    Awarding her front pay,

(c)    Awarding her compensatory damages;

(d)    Awarding her the costs of this action, together with reasonable attorney's fees; and

(e)    granting such other relief as the Court deems necessary and appropriate.

## COUNT XV
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT
## (AGAINST DEFENDANT KUBONIWA)

108.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

109.    Defendant Shigeo Kuboniwa, as plaintiff's supervisor, violated the PHRA in that he acted in concert with Defendant Nichia Corporation, aided Defendant Nichia, and abetted Defendant Nichia in discriminating against Plaintiff on account of her gender in the fashion set

forth above.

110.    The actions of Defendant Kuboniwa as set forth above, which were intentional, violated plaintiff's right to be free from sexual harassment as guaranteed by the PHRA.  Plaintiff suffered damages as a result of Defendant Kuboniwa's actions.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)    Awarding her lost wages, in the form of back pay, including lost fringe benefits;

(b)    Awarding her front pay.

(c)    Awarding her compensatory damages;

(d)    Awarding her the costs of this action, together with reasonable attorney's fees; and

(e)    granting such other relief as the Court deems necessary and appropriate.

Respectfully submitted,

By:  *s/Ralph E. Lamar, IV, Esq.*
RALPH E. LAMAR, IV, ESQUIRE
141 Spruce Lane
Collegeville, PA 19426
(610) 831-5181
(610) 831-0680 facsimile
ralph.lamar@verIzon.net

Attorney for Plaintiff

This 17th day of February, 2009.

## CERTIFICATE OF SERVICE

I, Ralph E. Lamar, IV, Esquire hereby certify that on this the 17th day of February, 2009,

I caused a true and correct copy of Plaintiff's First Amended Complaint to be served today by

electronic mail upon counsel for Defendants at the address listed below:

> Rory O. Connaughton
> Hartman, Underhill & Brubaker, LLP
> 221 E. Chestnut Street
> Lancaster, PA 17602-2782

> By:  *s/Ralph E. Lamar, IV, Esq.*
> RALPH E. LAMAR, IV
> ATTORNEY FOR PLAINTIFF
> 141 Spruce Lane
> Collegeville, PA 19426
> (610) 831-5181