IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOMOKO FUNAYAMA, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 08-5599 |
| | : | |
| NICHIA AMERICA CORP., et al., | : | |
| Defendants | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                         **May 20, 2009**

This is an employment discrimination case. Tomoko Funayama alleges that Nichia America Corporation (Nichia), her former employer, and Mr. Shigeo Kuboniwa, Ms. Funayama's supervisor and President of Nichia's offices in Mountville, Pennsylvania, subjected her to race, national origin, age, and gender discrimination in violation of 42 U.S.C. § 1981,[1] Title VII of the Civil Rights Act of 1964,[2] the Age Discrimination in

---

[1] 42 U.S.C. § 1981 states, in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." The Supreme Court confirmed that Section 1981 protects individuals against private employment discrimination on the basis of race. Georgia v. Rachel, 384 U.S. 780, 791 (1966).

[2] Title VII makes it "an unlawful employment practice for an employer...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a).

Employment Act (ADEA),[3] and the Pennsylvania Human Relations Act (PHRA).[4]  The complaint alleges the defendants also discriminated against her in retaliation for filing a complaint of discrimination[5] with the Pennsylvania Human Relations Commission (PHRC) and the United States Equal Employment Opportunity Commission (EEOC).  The defendants have filed a partial motion to dismiss (Document #6).  For the following reasons, I will grant it in part and deny it in part.

**I. Background**

Ms. Tomoko Funayama is a woman of Japanese descent and is over forty years old.  (Am. Compl. (Document #5) ¶ 10.)  She was hired by Nichia on April 3, 1995, to work in its offices in Mountville, Pennsylvania, as a Business Coordinator/Accountant.  (Id. ¶ 8.)  She was promoted to Assistant Financial Manager in January 1998 and to

---

[3] The ADEA protects older workers from discrimination based on their age.  See generally 29 U.S.C. § 623 (prohibiting employers from "fail[ing] or refus[ing] to hire or discharge or otherwise discriminate . . . with respect to [an individual's] compensation, terms, conditions, or privileges of employment, because of such individual's age").  The ADEA's protections are limited to individuals who are at least forty years old.  Id. § 631(a).

[4] The PHRA provides "[t]he opportunity for an individual to obtain employment for which he is qualified . . . without discrimination because of race, color, familial status, religious creed, ancestry, handicap or disability, age, sex, national origin . . . ."  43 P.S. § 953(West 2009).  Courts interpret the PHRA consistently with Title VII.  Weston v. Pennsylvania, 251 F.3d 420, 426 n.3 (3d Cir. 2001) ("The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably.").

[5] Before bringing a suit under the PHRA or Title VII, the plaintiff must first file a complaint with the PHRC or the EEOC, respectively.  See EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 110 (1988) ("As a general rule, a complainant must file a discrimination charge with the EEOC . . . ."); Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 918 (Pa. 1989) (stating that an individual must file a complaint with the PHRC before asserting a PHRA claim in court).

Financial Manager in January 2004.  (Id. ¶ 9.)

The complaint recounts numerous incidents of discriminatory treatment during her time at Nichia:

- Defendant Kuboniwa is alleged to have grabbed Ms. Funayama's breasts on several occasions and forced a kiss on her.  (Id. ¶¶ 18, 24.)  At least twice, he gave her graphic, sexually explicit literature to read (id. ¶¶ 20, 26), and he regularly asked her to come over to his apartment (id. ¶ 22).

- When traveling on business in 2001, Kuboniwa suggested they share a hotel room even though separate rooms had already been reserved.  (Id. ¶ 19.)

- In 2003, Funayama was once ordered to bring pain medication to Kuboniwa's home, and he received her while dressed in only his undergarments.  (Id. ¶ 21.)

- When a Nichia executive vice president came to visit the U.S. on a business trip in 2003, Kuboniwa scheduled a business dinner to be held at a local "Hooters" over Funayama's objections.  (Id. ¶ 23).  Funayama attended for the opportunity to network with the various Nichia managers, but felt uncomfortable as they commented on the waitresses' bodies in Japanese.  (Id.)

- In June 2006, referring to Funayama's husband (who is of Caucasian descent), Kuboniwa allegedly said he found it "hideous that [she] was becoming Americanized."  (Id. ¶¶ 14–15.)  Funayama believes "Kuboniwa would not have made this remark if [her husband] was Japanese."  (Id. ¶ 16.)

- In November 2007, Funayama submitted an Employee Self-Assessment evaluation on which she stated that one of her accomplishments was improving the balance between her work and personal life.  (Id. ¶ 29.)  Mr. Takanori Ujike, General Manager of Finance and Accounting in Nichia's Mountville office and Funayama's direct supervisor, told her "it was an inappropriate remark or accomplishment."  (Id.)

- On November 17, 2007, Kuboniwa berated Funayama in a "violent and aggressive manner" for including children in Nichia's holiday event, and allegedly blamed her "because she was a woman and had just had a child." (Id. ¶ 27.) Funayama believes that a male would not have been treated in this manner. (Id.) Mr. Ujike refused to do anything about the incident because "it was a personal matter." (Id.)

- On May 8, 2008, Kuboniwa allegedly told Funayama her body was "nice and slim yet not too skinny" and that he "[did] not feel a woman was sexy unless the woman's body was like hers." (Id. ¶ 39.)

The complaint contains allegations of discriminatory treatment in connection with Nichia's decision to transfer its Mountville offices to Detroit, Michigan, by June 2009:

- On May 7, 2008, she was told a decision had been made not to relocate her to Detroit, and she would be terminated when the transfer was completed. (Id. ¶ 35.) Her position would be filled by Mr. Brian Marshall, an Assistant Financial Manager who reported to Funayama. (Id.) Marshall is a Caucasian male in his twenties who had only three years of accounting experience at that time. (Id. ¶ 37.) By comparison, Funayama had thirteen years of experience at Nichia, was "regarded as one of its key employees," and had an "excellent" performance record. (Id. ¶ 41.)

- Kuboniwa said that he and another Nichia executive "did not want any Japanese in the Detroit Accounting Department." (Id. ¶ 36.)

- On May 8, 2008, Kuboniwa said that "if there were any help needed in the Detroit accounting department that [Nichia's parent corporation in Japan] would send a young male Japanese person from Japan to help out." (Id. ¶ 40.)

Based on these facts, Funayama filed a complaint of age, gender, and national origin discrimination with the PHRC and the EEOC on May 28, 2008. (Id. ¶ 42.) That same day, she met with Kuboniwa and was told Mr. Ujike would be resigning on August 14, 2008. (Id. ¶ 43.) Instead of losing her job, she would be kept on for the transition to Detroit, but was not told what her duties or responsibilities would be. (Id. ¶¶ 43–44.) Nichia would not learn of the complaint until a few days later. (Id. ¶ 42.)

On June 25, 2008, Funayama met with Kuboniwa, Ujike, and Marshall. She was told that Marshall would be promoted to Ujike's position. (Id. ¶ 45.) She would be reassigned from her position as Financial Manager to a non-managerial clerical position. (Id.) She viewed this to be effectively a demotion. (Id.) On June 26, 2008, Ujike encouraged Funayama to look through a "career change" website and told her the Detroit managers "did not like her and . . . were troubled that she had been offered a position in Detroit." (Id. ¶ 46.) On June 27, 2008, Kuboniwa told her the company had been notified by the EEOC regarding her complaint and they "didn't know what to do with her." (Id. ¶ 47.)

On July 1, 2008, Ms. Funayama filed a charge of retaliatory discrimination with the PHRC and the EEOC, and resigned her employment on July 28, 2008. (Id. ¶ 48.) On December 2, 2008, Funayama filed her initial complaint, and then filed the amended complaint as a matter of right (Document #5) on February 17, 2009.

The defendants filed their partial motion to dismiss (Document #6) on February

27, 2009.  It contains three primary arguments: (1) Count I (Race/national origin discrimination under Section 1981) should be dismissed because Section 1981 does not provide a cause of action based on national origin discrimination and the complaint does not state a race discrimination claim; (2) Funayama failed to establish the *prima facie* case for her retaliatory discrimination claims (Counts II, IX–XII); and (3) any PHRA claims (Counts IV, VI, VIII, X, XII, XIV–XV) must be dismissed for failure to exhaust administrative remedies.  For the following reasons, I will grant the motion in part and deny it in part.

## II. Standard of review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative.  Bell Atlantic Corp. v. Twombly, 550 US 544, 127 S.Ct. 1955, 1965 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  Id.  See also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all

of the facts upon which he bases his claim.  Conley, 355 U.S. at 47.  Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  Id.  The "complaint must allege facts suggestive of [the proscribed] conduct."  Twombly, 127 S.Ct. at 1969.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).  The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements.  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S.Ct. at 1965)).

**III. Discussion**

I will grant the motion with respect to the claim for race/national origin discrimination under Section 1981 will be dismissed, and I will deny it as to the retaliation claims and the PHRA claims.

**A. Race/national origin discrimination claims**

I will grant the motion with respect to Count I because it does not state a claim for race discrimination.  The Supreme Court has clearly held that section 1981 protects individuals against private employment discrimination on the basis of race.  Georgia v.

Rachel, 384 U.S. 780, 791 (1966). Whether the statute provides a federal remedy for discrimination based on national origin is less clear. Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

In St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987), the Supreme Court examined the history of section 1981 and concluded that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." The Court noted that "section 1981, at a minimum, reaches discrimination against an individual because he or she is genetically part of an ethnically and physiognomically distinctive grouping of homo sapiens." Id. (citations and quotations omitted). Justice Brennan's concurrence in Al-Khazraji provides that he "read the Court's opinion to state only that discrimination based on *birthplace alone* is insufficient to state a claim under [section] 1981." Id. at 615 (Brennan, J., concurring). Based on these passages, I find that the Supreme Court has implicitly stated that section 1981 affords no protection to an individual alleging discrimination based on national origin alone.

There appears to be a split of authority within the Third Circuit on the issue of

whether section 1981 provides a cause of action for discrimination based solely on a person's national origin.  The Third Circuit itself has not directly addressed this issue. See Bennun v. Rutgers State Univ., 941 F.2d 154, 172 (3d Cir. 1991), cert. denied, 502 U.S. 1066 (1992) ("Section 1981 does not mention national origin.").  The majority of district court decisions in this Circuit, however, have rejected the proposition that national origin discrimination claims fall within the statute's ambit.[6]  See Ladd v. Boeing Co., 463 F. Supp. 2d 516, 524 (E.D. Pa. 2006) ("Unlike Title VII, Section 1981 does not prohibit discrimination based on national origin."); Fekade v. Lincoln Univ., 167 F. Supp. 2d 731, 739 (E.D. Pa. 2001) (agreeing with plaintiff's concession that section 1981 "was not drafted in terms of national origin, and thus [plaintiff's] claim of national origin discrimination cannot be founded on a violation of this statute"); Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 617–18 (E.D. Pa. 1998) ("Section 1981 . . . does not bar discrimination purely on the basis of national origin.") (citations omitted); King v. Twp. of E. Lampeter, 17 F. Supp. 2d 394, 417 (E.D. Pa. 1998) ("The scope of [section] 1981 is not so broad as to include disparity in treatment on the basis of religion, sex, or national origin") (citation omitted); Zezulewicz v. Port Auth. of Allegheny County, 290 F. Supp. 2d 583, 598 (W.D. Pa. 2003) (noting that section 1981's "scope is limited to instances of

---

[6] I recognize that at least one case in this district has allowed a claim under section 1981 based on national origin.  In Abdulhay v. Bethlehem Med. Arts, L.P., Civ. A. No. 03-0447, 2004 WL 620127, at *5 n.35 (E.D. Pa. March 29, 2004), Judge Gardner held that "[d]iscrimination on the basis of national origin, ethnicity and ancestry clearly fall within the realm of [s]ection 1981." Abdulhay, 2004 WL 620127, at *5.  Despite this language, I will follow the majority of cases in the Third Circuit and hold that section 1981 does not apply to claims of employment discrimination based on national origin alone.

racial discrimination"); <u>Wallace v. Graphic Mgmt. Assocs., Inc.</u>, Civ. A. No. 04-0819, 2005 WL 527112, at *3 (E.D. Pa. March 3, 2005) (citing <u>Al-Khazraji</u>, 481 U.S. at 613–14) (holding that while "[section] 1981 does not prohibit discrimination based on national origin," *pro se* plaintiff's complaint could be read to allege a section 1981 claim based on race, ethnicity, and ancestry).

I will grant the motion as to this part because Count I presents a national origin discrimination claim only. The facts set forth in the complaint highlight the discriminatory treatment Funayama endured because of her national origin. (<u>See, e.g.</u>, Am. Compl. ¶ 10 (stating that Funayama is a "woman of Japanese/Asian ancestry"); <u>id.</u> ¶ 36 (stating that one of the alleged reasons Funayama would not be transferred to Detroit was that Kuboniwa and other individual "did not want any Japanese in the Detroit Accounting Department"); <u>id.</u> ¶ 38 (stating that Kuboniwa's actions were based on the fact that he "viewed [Funayama] as a stereotypical Japanese female who would remain submissive and not complain"); <u>id.</u> ¶ 40 ("[Kuboniwa] said that if help was needed in the Detroit accounting department, Nichia would send for a young male from Japan to help out.").)

Funayama counters that the complaint states Kuboniwa made a negative remark regarding her husband's ethnicity, she was replaced by a Caucasian male, and she is of Asian descent. (Pl.'s Opp'n Mem. at 3; <u>see also</u> Am. Compl. ¶¶ 10, 14–15, 37.) In further support, she highlights the complaint's statement that Nichia's discriminatory

treatment was motivated by "[her] race and/or national origin." (Pl.'s Opp'n Mem. at 3–4; Am. Compl. ¶ 51.) I am unconvinced that these statements convert Count I to a race discrimination claim. First, the racial implications of the statement regarding Ms. Funayama's husband are minimal. Funayama herself believes Kuboniwa's statements were motivated by her husband's nationality, not his ethnicity or ancestry. (Am. Compl. ¶ 16 (stating that Kuboniwa would not have made the remark if Funayama's husband were Japanese)). I see no reason to interpret those statements otherwise.

Second, I do not believe that the fact Funayama was replaced by Marshall suggests the presence of racial discrimination when read in the context of the complaint. The near entirety of the complaint's allegations recount the national origin-based treatment Ms. Funayama endured. As the complaint states in direct reference to this incident, "*Americans* . . . would not have been treated in this manner. Kuboniwa viewed plaintiff as a stereotypical *Japanese* female who would remain submissive and not complain." (Id. ¶ 38 (emphases added).) This language bolsters the argument that this is a national origin discrimination claim. No language alters the undeniable fact that Funayama herself viewed this as a national origin issue, not one of race.

Finally, "formulaic recitation of a cause of action's elements" will not survive a motion to dismiss. Twombly, 550 U.S. at 555. Simply stating that one endured race discrimination without presenting allegations suggestive of such conduct does not meet our pleading standards. Though detailed factual allegations are not necessary, the

plaintiff must allege sufficient facts to suggest that discovery may lead to evidence of the necessary elements of the claim. McTernan v. City of York, 2009 WL 1111097, at *5–6 (3d Cir. Apr. 27, 2009) (discussing the federal pleading standards in light of the Supreme Court's ruling in Twombly). Here, everything points to national origin discrimination, and nothing in the complaint alleges that the defendants discriminated on the basis of Ms. Funayama's race or color. See, e.g., Beaubrun v. Inter Cultural Family, 2006 WL 1997371, at *5 (E.D. Pa. July 13, 2006) (dismissing a Section 1981 claim where the complaint was devoid of any allegations of race-based discrimination).

**B. Claims for retaliation**

I will deny the motion with respect to the claims for retaliation. Employers are prohibited from retaliating against employees who oppose discriminatory employment practices or file their own complaints of discrimination. 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 1981(a); id. § 2000e-3(a) (Title VII); 43 P.S.C.A. § 955(a) (PHRA). A plaintiff bears the initial burden of establishing a *prima facie* case of retaliation by a preponderance of the evidence. Storey v. Burns Int'l Sec. Servs., 390 F.3d 760 (3d Cir. 2004) (citing Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)). To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected activity;[7] (2) the defendant took a materially adverse action against her; and (3)

---

[7] Protected activity includes filing Charges of Discrimination or making complaints about discriminatory employment practices. Abraham v. William Paterson Coll., 260 F.3d 265, 287-288 (3d Cir. 2001). Informal charges or complaints of discrimination are sufficient to constitute protected activities for establishing a *prima facie* case of retaliation. See Barber v. CSX Distrib. Servs., 68 F.3d

there was a causal connection between the protected activity and the employer's adverse action. Weiler v. R&T Mech., Inc., 255 Fed. Appx. 665, 667-68 (3d Cir. 2007) (citing Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d Cir. 2006)). If Ms. Funayama establishes this *prima facie* case of retaliation, the familiar McDonnell-Douglas approach applies in which the burden of production shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the decisions not to promote Funayama and to change her duties. See McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once the defendant meets this relatively light burden, the burden of production returns to Funayama, who must show by a preponderance of the evidence that the defendants' proffered reason is pretextual. Id. at 804–05.

    I find that the complaint properly states a retaliation claim. The complaint presents a timeline indicating Funayama was "demoted" to "non-managerial clerical duties" after she filed her charge of discrimination. (Am. Compl. ¶¶ 45, 56, 82, 87, 91, 95.) Though told in May 2008 that she would be terminated after the corporate transfer to Detroit, Funayama was later asked to stay on and assist through the transition. (Id. ¶¶ 35, 43.) She had filed her charge of "gender, age, and national origin" discrimination that same day; Nichia did not learn of it until a few days later. (Id. ¶ 42.) When asked to stay on, Funayama was not told what her responsibilities and duties would be. (Id. ¶¶ 43–44.) Given her duties and job performance, she believed that her position and responsibilities

---

694, 701-02 (3d Cir. 1995).

would continue to be the same or similar. (Pl.'s Opp'n Mem. at 5–6.)

The defendants argue that because Nichia had already decided to terminate Funayama once the transition was completed, the decision to reassign her was anything but retaliatory. (Defs.' Mem. to Dismiss at 16–17.) Weighing those facts at this point though would be contrary to the standard of review. Though hardly conclusive, the fact that Nichia supervisors did not tell Funayama what her continuing duties would be until long after the company had learned of her PHRC and EEOC filings is sufficient to establish the necessary causal link between her protected actions and the employer's adverse employment decision. Drawing all inferences in favor of the plaintiff, I find the complaint sufficiently states a claim for retaliation.

### III. Dismiss for failure to exhaust administrative remedies

I will deny the motion as to this point. The defendants' argument is that Funayama failed exhaust her remedies because she filed this complaint before either one year had passed from the date of the filing of her administrative complain or the PHRC administratively closed the file. (Defs.' Mem. to Dismiss at 18.) Counsel for the plaintiff has provided a copy of the PHRC's April 13, 2009 letter to Ms. Funayama indicating her file would be administratively closed. The defendants' argument is therefore moot, and the claims will not be dismissed.

**IV. Conclusion**

  For the foregoing reasons, I will grant the motion to dismiss in part and deny it in part. An appropriate Order follows.