IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOMOKO FUNAYAMA, | : |
| | : CIVIL ACTION NO. 08-CV-5599 |
| Plaintiff, | : |
| vs. | : |
| | : |
| NICHIA AMERICA CORPORATION, and | : |
| SHIGEO KUBONIWA, | : |
| | : |
| Defendants. | : |

**RALPH E. LAMAR'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION TO DISMISS HIS FEE LIEN**

COMES NOW RALPH E. LAMAR, former counsel for Plaintiff herein, and files this, his memorandum of law in opposition to Plaintiff's Motion to Dismiss His Fee Lien as follows:

INTRODUCTION

Plaintiff filed her multiple count complaint alleging that Defendant Shigeo Kuboniwa sexually harassed her and that Nichia was responsible for the harassment under Title VII and the PHRA, and also that Nichia constructively discharged her on the basis of her race, age, and/or national origin in violation of 42 U.S.C. § 1981 when she was not given a job in the Detroit office (and a male caucasian subordinate who was much younger and with much less experience was transferred), then was not given her boss' job when he resigned, and then was demoted. A motion to dismiss was filed by Defendants and a responsive pleading was filed by plaintiff. Subsequently plaintiff filed a first amended complaint on February 17, 2009. Discovery commenced shortly thereafter. A scheduling order was signed by the Court on July 1, 2009. That order established October 30, 2009, as the end date of discovery.

The deposition of Tadashi Fujikura was taken by the plaintiff in Lancaster on June 19,

2009.  At the time of Mr. Fujikura's deposition most of the witnesses for the defendant were located in Detroit, Michigan.  Efforts were made to try to settle the case prior to going to Detroit which would have been a costly matter.  Plaintiff agreed to attend a private mediation before Judge Cahn.  See ¶ 2 of declaration of Ralph E. Lamar attached hereto as Exhibit A.  She understood that she would be responsible for half of Judge Cahn's costs prior to agreeing to attend.  The Defendant made a Rule 68 Offer of Judgment prior to the mediation which was set to expire on the date of the mediation.  The mediation was unsuccessful in large part due to plaintiff's changing desires as regarded her settlement position.  Plaintiff's deposition was held in Lancaster on September 15, 2009, the day after the failed mediation.

Depositions of Nichia's employees were then scheduled in Detroit for the first week of October.  The following persons were to be deposed:  Dan Doxsee, Brian Marshall, Shigeo Kuboniwa (the individually named defendant) and Tae Kim.  *Id.*, at ¶ 3.  That was to be the only remaining discovery to be conducted in the case other than a possible deposition of Deborah Masinos, a third party witness, in Lancaster, PA.  Because of issues surrounding the deposition of plaintiff, and her and her husband's response to the delivery of a box to her at her deposition the relationship between Ms. Funayama and Mr. Lamar became severely strained.  Shortly before the Detroit depositions were to take place Plaintiff asked Mr. Lamar why the case had not settled at the mediation in front of Judge Cahn since she had purportedly accepted the defendant's monetary offer.  Plaintiff's counsel realized that there was an issue with plaintiff and her perception of the case, and expressed concern about going to Detroit and spending a significant amount of money when it appeared that plaintiff might have been willing to accept Defendants' last offer to settle.  When Mr. Lamar indicated to Ms. Funayama that he would not

go to Detroit to take the depositions given the mixed messages he was receiving from plaintiff and his belief that maybe the case could be settled, with the assistance of Judge Perkin, she terminated his services.

On October 13, 2009, Mr. Lamar moved to withdraw from the case and the Court held that motion in abeyance. Mr. Lamar made it clear to plaintiff that she had a duty to find other counsel to represent her and that he would take no further efforts on her behalf given her termination of his services. *Id.*, at ¶ 4. Over the next 8 weeks Plaintiff sent written communications to the Court on at least two occasions without providing copies to either Mr. Lamar or Mr. Connaughton, counsel for Defendants.

At some point in time Ms. Funayama contacted Anne Thompson, who agreed to consider representing Ms. Funayama. Mr. Lamar spoke with Ms. Thompson, a plaintiff's employment lawyer from Detroit Michigan, about the case in late November. *Id.*, at ¶ 5. A settlement conference was scheduled by the Court for December 17, 2009. However, Ms. Funayama indicated that she couldn't attend at the last minute and asked to be excused from the conference. On December 16, 2009, the Court scheduled a new settlement conference with Judge Perkin for March 22, 2010. To accommodate Ms. Funayama, the discovery deadline was extended by the court up through March 31, 2010. Ms. Thompson thereafter notified the court that she would not represent Ms. Funayama on or about January 20, 2010.

The Court granted Mr. Lamar's motion to withdraw as counsel on March 4, 2010. Plaintiff has failed to pay her outstanding expenses and any attorneys fees for work performed by Mr. Lamar, even though the contract she signed for his services provides for such. *Id.*, at ¶ 6. Accordingly Mr. Lamar notified both Mr. Connaughton and Ms. Thompson in writing and in

phone conversations that he would be asserting a fee lien in the case. After the Court granted Mr. Lamar's motion to withdraw as counsel he filed his fee lien with the Court on March 22, 2010, (the date of the settlement conference) in order to be reimbursed for his expenses and to be compensated for his work which had generated a reasonable settlement offer. At no time did Mr. Swomley or Ms. Funayama contact Mr. Lamar to see if he would compromise his fee lien. *Id.,* at ¶ 7. The case did not settle at the conference and Mr. Swomley, an attorney from Massachusetts who accompanied Ms. Funayama to the conference, decided shortly thereafter that he did not want to enter a formal appearance in the case. Ms. Funayama is now again without counsel. She has now filed a motion with the court to Dismiss Ralph Lamar's fee lien, although conveniently failing to provide Mr. Lamar with a copy of said motion.

## LEGAL STANDARD AND ARGUMENTS

Ms. Funayama has not provided the Court with any legal authority for the dismissal of Ralph Lamar's fee lien. In an apparent effort to find new counsel after several failed attempts to do so and ostensibly to obtain a higher portion of any future settlement offer she has presumed that she can ignore her previous contractual obligations and that by making vague unsubstantiated allegations against Mr. Lamar that the court has the authority to dismiss the fee lien. (To the extent that Ms. Funayama ever submits any legal authority to the Court in connection with said motion to dismiss Ralph Lamar's fee lien he will be happy to address said authority at that time).

## RESPONSE TO MS. FUNAYAMA'S FACTUAL ALLEGATIONS

Ms. Funayama makes the allegation that she has been defrauded by Mr. Lamar. She provides no specifics. In fact, Ms. Funayama has failed to pay for legal services without a

reasonable basis for doing so.  There has been no effort by Mr. Lamar to take something from Ms. Funayama that he is not entitled to.  Her statement that Mr. Lamar is "embroiled in a difficult and stressful divorce" is without any factual support (or relevance for that matter).  She has not shown that the fact that he moved once after agreeing to represent her has in any way affected the quality of his representation.  (The second move was made on December 1, 2009, after Ms. Funayama terminated his services.)

Plaintiff also makes the allegation that she was not provided with information about the discovery schedule.  Ms. Funayama is mistaken.  Mr. Lamar provided her with regular updates about the scheduling of matters in her case.  *Id.*, at ¶ 8.  She knew when discovery commenced and when it was going to end.  In fact, when she fired her counsel and asked the Court to extend the discovery period to allow her time to find new counsel the Court obliged and extended the discovery period until March 31, 2010, in an effort to allow her time to find substitute counsel.

Ms. Funayama makes the outrageous allegation that Mr. Lamar fell asleep three times during her deposition.  He did not.  *Id.*, at ¶ 9.  She further goes on to quote double hearsay from her husband and Joan Gold that an unnamed client female terminated Mr. Lamar's services at about the same time that plaintiff terminated his services.  There is absolutely no evidence to suggest this is true, but even assuming it was so, one is forced to say "so what?" if it were.

Ms. Funayama goes on to contend that Mr. Lamar had improper ex parte communications with Judge Perkin.  She does not provide any evidence that Mr. Lamar's communications with Judge Perkin were anything but appropriate.1  Strangely enough Ms. Funayama, who goes to

---

1 Mr. Lamar understands that Ms. Funayama has previously provided the Court with at least two multi-page letters regarding her case following the severing of her relationship with Mr. Lamar.  Ms. Funayama did not have the courtesy to provide a copy of these letters to Mr. Lamar.  At this

great lengths to detail improper communications between Mr. Lamar and Judge Perkin, then provides assertions about the conference her short term lawyer, Mr. Swomley, allegedly had with Judge Perkin. Yet, she provides no affidavit from Mr. Swomley setting forth the purportedly inappropriate statements of Judge Perkin.2

Ms. Funayama makes the allegation that "numerous NELA attorneys" told her that Mr. Lamar's actions had "harmed" her case to the point that no attorney would now take it on a contingency basis. She, of course fails to provide their names, let alone provide any affidavits. Given that the defendants made no offers to settle plaintiff's claims prior to suit and only offered to settle after Mr. Lamar's efforts, there is no basis for plaintiff to claim that Mr. Lamar damaged her case. It is more likely that if any lawyers told her anything about her case it is that they told her that because she had received a fair settlement offer and rejected it that they would not take the case. Or maybe it was because the spectre of representing her with a Rule 68 offer hanging over her head meant that they might not be paid *at all* for their efforts.

As to settlement negotiations, contrary to Ms. Funayama's allegation, Mr. Lamar did inform Judge Cahn that plaintiff had demanded $375,000 from defendants earlier in the case, both in writing, and in person at the mediation. *Id.*, at ¶ 10.

Finally, Ms. Funayama claims that Mr. Lamar failed to address (include) her retaliation

---

date it is unclear what, if any, allegations she made about Mr. Lamar in said communications with the court. This brings to mind the old adage about "the pot calling the kettle black". Based upon the Court's action of extending discovery it is very likely that in one of these letters Ms. Funayama asked for the extension of the discovery period.

2 Mr. Lamar contacted Mr. Swomley by telephone (a message was left on his voice mail) and via e-mail in an effort to see whether he would support her allegation. Mr. Swomely responded via e-mail stating that he had tried to contact Ms. Funayama to see if she had any problem with him responding but she had not called him back and he would not respond until he had made reasonable efforts to speak with her. *Id.*, at ¶ 11.

claim under 42 U.S.C. § 1981. Ms. Funayama has not bothered to review the complaint filed with the court or else has just used language inappropriately. The claims under 42 U.S.C. § 1981 were specifically included. She then goes on to inexplicably complain that the claim was included in the complaint *prematurely*. Yet she doesn't seem to understand that said claim could not be left out of any complaint and then "sprung" upon Defendants at a later time. There is no legal basis for bringing a parallel claim at a later date, as claim preclusion will apply. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 473, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998). Ms. Funayama, appears not to be familiar with the holding of the Third Circuit in *Churchill v. Star Enterprises*, 183 F.3d 184 (3d Cir. 1999)(holding that the plaintiff should have moved for a stay of the proceedings in the first suit under the FMLA so that all claims arising from the same set of facts could be litigated at one time). There is simply no basis whatsoever for contending that the counts for violations of 42 U.S.C. § 1981 should have been left out of the complaint and that the inclusion of those claims has somehow injured the plaintiff.

## CONCLUSION

Plaintiff, having provided no legal authority for her motion and having shown no facts which would support a Court's dismissal of an attorney fee lien has taken the approach of maligning everyone involved in the case to date (other than Mr. Swomley it appears) in an effort to avoid the natural consequences of her own actions.

WHEREFORE, Ralph E. Lamar, having shown that Plaintiff's Motion to Dismiss his Fee Lien is without merit, respectfully requests the Court Deny Plaintiff's Motion.

This 26th day of April, 2010.

        _s/Ralph E. Lamar, IV_____
        Ralph E. Lamar, IV, Esq.

                        376 Green Lane, #2F  
                        Philadelphia, PA 19128  
                        (215) 483-1473  
                        (215) 483-1503 facsimile  
                        ralph.lamar@verizon.net

**CERTIFICATE OF SERVICE**

I, Ralph E. Lamar, IV, Esquire hereby certify that on this the 26th day of April, 2010, I caused a true and correct copy of Ralph Lamar's Brief in Opposition to Plaintiff's Motion to Dismiss his Fee Lien to be served today by electronic mail upon Plaintiff and upon counsel for Defendants at the addresses listed below:

> Tomoko Funayama
> 112 N. Main Street
> Sylacauga, Alabama 35150
>
> Rory O. Connaughton
> Hartman, Underhill & Brubaker, LLP
> 221 E. Chestnut Street
> Lancaster, PA 17602-2782

> By:  __s/Ralph E. Lamar, IV_____
>         RALPH E. LAMAR, IV