Civil Action No. 08-CV-5599 Document _12_ Filed 6/14/10 Page 1 of _21_

Tomoko Funayama
112 N. Main Avenue
Sylacauga, AL 35150
Telephone: 717-368-2406
Email: funtoma29@hotmail.com

IN THE UNITED STATES DISCTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOMOKO FUNAYAMA, PRO SE | **CIVIL ACTION NO. 08-CV-5599** |
| Plaintiff, | PLAINTIFF'S OBJECTIONS TO JUDGE PERKIN'S REPORT AND RECOMMENDATIONS FILED MAY 26, 2010 |
| vs. | |
| NICHIA AMERICA CORPORATION, and SHIGEO KUBONIWA, | |
| Defendants, | |

On 5/3/10 the Honorable Judge Stengel referred Plaintiff's remaining motions filed on

4/9/10 to Magistrate Judge Perkin. Judge Perkin recommended dismissal of Plaintiff's

remaining motions filed May 26, 2010 and received by Plaintiff at her residence at:112 N.

Main Avenue Sylacauga, Alabama on June 1, 2010. Judge Perkin's Report and

Recommendation were followed by a Notice page 1 of 1. In this notice Clerk of Court is

shown as MICHAEL E. KUNZ in capitals large case. RALPH E. LAMAR, IV is shown

in capitals large case. RORY O. CONNAUGHTON is shown in capitals large case.

Deputy Clerk Evelyn Renner is shown with first and last name showing only capitals for

the first letters of the first and last name. The plaintiff is shown as T. Funayama. Plaintiff

has a first name and a last name that is clearly reflected in the caption of her complaint. Plaintiff now wonders why her name is isolated out from the others in a format that is shown in small case lettering. It is patent when one looks closely at this notice page. In example it reads cc:

> T. Funayama
> RALPH E. LAMAR, IV
> RORY O. CONNAUGHTON

This was done by someone for some conscious reason. Plaintiff has a first name that is clearly visible on the caption page of the complaint and her first name was purposefully reduced to a single letter in the Report and Recommendation Notice page. Someone had to purposefully change to using the lower case for the plaintiff and purposefully used a single letter instead of her first name. Anything that can be construed to be discriminatory toward any plaintiff or defendant should be avoided at all costs, to guarantee the equal treatment of all parties. On page 1 of his Report and recommendation Judge Perkin states that" on 7/1/09, Judge Stengel referred this matter to me for the purpose of conducting [a] settlement conference."(Docket 16). In the same order, Judge Stengel ordered that "all discovery shall be completed by 10/30/2009". By his own admission Judge Perkin was to hold one settlement conference. Plaintiff was not informed of the conference of 9/30/2009 until after it had occurred. Furthermore, plaintiff was not informed that discovery was to be completed by 10/30/2009. By his own admission Judge Perkin knew that discovery was to be completed by 10/30/2009. Judge Perkin states on page 5 of his Report and Recommendations that there can be no lack of due diligence by a judge who has held seven telephonic conferences and an in-person conference. Judge Perkin talks

about and lists just 6 telephonic conferences held on; 9/30/09, 10/9/09, 10/15/09, 12/4/09, 12/15/09, and 12/16/09. Judge Perkin failed to mention the 7th telephonic conference that was held on 10/8/09 with Mr. Lamar (Exhibit 12-E1 Mr. Lamar's Email to Plaintiff dated 10/9/09). This email from Mr. Lamar to plaintiff shows clearly that Judge Perkin was actively involved in trying to effect a settlement. To avoid prejudice, the Court is not informed of a Rule 68 offer of judgment unless it has either been accepted or invoked by the offeror following trial. 13 James Wm Moore et al, Moore's Federal Practice 68.04 [2] 3d ed. 2004. Judge Perkin was to hold [a] settlement conference. In Judge Perkin's own settlement procedures under preliminary general matters # 3, (Exhibit 12 E-2 Honorable Henry S. Perkin Preliminary General Matters), it states "Judge Perkin prefers that counsel come to chambers for [all] conferences. Telephone conferences may be utilized, however, for dealing with matters such as scheduling changes and routine discovery disputes. Contrary to Judge Perkin's own established settlement procedures, Judge Perkin held 7 telephonic settlement conferences with Mr. Connaughton and Mr. Lamar without the knowledge of plaintiff. It is clear that these telephonic conferences revolved around the Rule 68 Offer of Judgment that Judge Perkin, Mr. Lamar and Mr. Connaughton were attempting to foist upon Plaintiff. Plaintiff asserts no lack of diligence on the part of Judge Perkin as he opines on page 5 of his Report and Recommendations. On the contrary, Judge Perkin was very diligent in attempting to make this Rule 68 Offer of Judgment succeed. Based on the actions and behavior of the parties regarding the Rule 68 Offer of Judgment telephonic conferences of ; 9/30/09, 10/8/09, 10/9/09, 10/15/09, 12/4/09, 12/15/09, 12/16/09 the inference is clear to the plaintiff that the Rule 68 Offer of

Judgment was the clear motive behind these 7 telephonic conferences. Any other inferences fall outside of the range of reasonable possibility. Plaintiff now reasonably infers that due to this judicial involvement in attempting to make the Rule 68 Offer of Judgment work and in concert with the fact that Plaintiff's discovery scheduled for 10/5,6,7/09 in Detroit, was trilaterally cancelled immediately following Judge Perkin's 9/30/09 telephonic settlement conference (Exhibit 12 E-3 Mr. Connaugton's Letter to Mr. Lamar dated 9/30/09) and the fact that discovery was never resumed, and in fact was allowed to toll, plaintiff reasonably believes that this Court is prejudiced towards her and to her right to an orderly and efficient disposition of her claims pending before it. On page 2 of Judge Perkin's Report and Recommendations, Judge Perkin states "Thereafter, I commenced a series of ex- parte phone conferences with counsel of record in an effort to explore settlement of the plaintiff's claims." It is notable that Mr. Lamar was fired by plaintiff on 10/10/09 , yet Judge Perkin by his own admission continued to have settlement conferences with Mr. Lamar on 10/15/09, 12/4/09 and 12/16/09. Plaintiff believes that it is unrefutable that these telephonic conferences revolved around the Rule 68 Offer of Judgment that was proffered by the Defendants (offeror's) at the 9/30/09 telephonic settlement conference with Judge Perkin.(Exhibit 12-E4, Plaintiffs Email to Mr. Lamar dated 10/9/09, Exhibit 12-E5 Plaintiff's letter to Judge Stengel dated 12/23/09).

In Defendants Omnibus Response (Docket 45) Mr. Connaughton states on page 9 "There

is zero sexual content in the photo. It depicts a fully clothed chimpanzee and a toddler

standing on a table." Plaintiff believes that this misstatement on the part of Mr.

Connaughton is serious. Plaintiff believes that this misstatement misled the Court and

was an attempt to prevent questioning on a relevant subject. This misstatement of fact

was knowingly made to a Federal Judge. Plaintiff has been kept in the dark regarding

many of the important aspects of her case and she has been denied the due process and

the equal protection of the laws that are so vital to every plaintiff and defendant.  On page

10 of Judge Perkin's Report and Recommendations Judge Perkin states, " In addition, the

false assertions of conduct ascribed to this judicial officer, as well as to Judge Stengel,

would not be tolerated if made by a licensed attorney, and will likewise, not be tolerated

by a Pro Se litigant." Plaintiff would like to state that she will always assert her 1st

Amendment rights and would not want her freedom of speech and expression to be

abridged or to allow any statement made by any party or by the Court itself to have a

chilling effect upon her speech. In "On Liberty" (1859) John Stuart Mill argued that there

ought to exist the fullest liberty of professing and dismissing as a matter of ethical

conviction, any doctrine, however immoral it may be considered. Mill argues that the

fullest liberty of expression is required to push arguments to their logical limits, rather

than the limits of social embarrassment. Defendants are no doubt embarrassed by the

material that they delivered to Plaintiff on several occasions during her 14 years of loyal

employment. Plaintiff asserts a right to leave her employment in a dignified way. This

right was denied to Plaintiff by Defendant's. Furthermore Defendant's are no doubt

embarrassed by the adult sexual pornography and the alleged Child pornography that

Defendant Kuboniwa delivered and presented to plaintiff at her deposition on 9/15/2009.

Judge Stuart R. Dalzell in Reno v. ACLU one of three federal judges who in June 1996

declared parts of the CDA(Communications Decency Act of 1996) unconstitutional ,

opined the following: The Government can continue to protect children from

pornography on the internet through vigorous enforcement of existing laws criminalizing

obscenity and child pornography. The strength of the Internet is chaos. "Just as the

strength of the internet is chaos, so that strength of our Liberty depends upon the chaos

and cacophony of the unfettered speech that the First Amendment protects." In Judge

Perkin's Report and Recommendation Judge Perkin's opines that "she must follow all of

the requisite rules and procedures. Plaintiff asserts that she is not pro se because of any

failure or neglect on her part but on the part of the Court and the counsel that plaintiff

was forced to fire as well as on the part of Ms. Thompson that failed to enter her

appearance as she, Ms Thompson had contracted with Plaintiff and her husband to do.

Plaintiff fired Mr. Lamar only after she became aware of his negligence, incompetence

and willful neglect of her case. Plaintiff is mindful that the factual contentions within her

pleadings, written motions and other papers have evidentiary support. If any party wishes

to point out specific areas where the evidence does not support plaintiff's factual

contentions, then she would always welcome an opportunity to argue these facts and

questions thereof to a jury. Plaintiff does not wish to decide the law, but to buttress it on

her behalf. As for the "false assertions of conduct" that Judge Perkin feels assailed,

Plaintiff asserts that she is simply stating the obvious in her review of the fact situations

as she sees them and Plaintiff is simply articulating her First Amendment rights regarding these fact situations as they are presented. Plaintiff would like to assert that the facts that she sees regarding the handling by the Court of her discovery schedule, and the fact as she sees them regarding a second Rule 68 OOJ was coming out of the 9/30/09 settlement conference before Judge Perkin, that Plaintiff knew nothing about and the facts as she sees them that her discovery previously scheduled in Detroit for 10/5,6,7/09 was cancelled immediately following the 9/30/09 settlement conference with Judge Perkin, and the facts as Plaintiff sees them that her discovery was never resumed and that her discovery was allowed to toll, even after Plaintiff instructed her counsel Mr. Lamar to fly to Detroit and take the discovery that he had scheduled, leads Plaintiff to infer that both Mr. Lamar and Mr. Connaughton were acting under Color of Law when they both cancelled Plaintiff's discovery and that in fact Plaintiff believes that her Constitutional rights were violated under Title 42 sections 1983 and 1985. This is what Plaintiff believes after looking at all the facts of which she is privy. If there are more facts that have not been brought to Plaintiff's attention, then she prays this Court to enlighten her. Plaintiff can only look at the fact situations through the lens that have been presented to her and she can only infer what a reasonable review of the fact situation would bring to a reasonable person being presented with the same facts. Judge Perkin states on page 4 of his Report and Recommendation that "At no time was Plaintiff pressured to settle. In fact, she agreed to private mediation with former Chief Judge Edward N. Cahn. That mediation would have never taken place without her consent."

Plaintiff admits that her consent was required for the private mediation to take place,

however, Plaintiff did not wish to go to the mediation and consented only after her

counsel Mr. Lamar had told her that no settlement conference with Judge Perkin was

available and that Judge Cahn would be a good choice since Defendant's were pushing

Lamar to take Plaintiff to a settlement conference since Defendant's wished to settle the

case. Plaintiff previously brought up the fact that Defendant's timed their first Rule 68

OOJ to coincide with a date that would make it impossible for Plaintiff to cancel the

9/14/09 settlement conference without incurring the full cost of the settlement conference.

Plaintiff would have cancelled the 9/14/09 settlement conference with Judge Cahn after

she became aware of the Defendant's meager Rule 68 OOJ timed to expire on 9/14/09

and delivered to Mr. Lamar such that Plaintiff would not have time to cancel the 9/14/09

settlement without sustaining the full cost of the conference. The facts surrounding this

machination show bad faith and this was confirmed when the Defendant's refused to

move off of their meager $40,000.00 offer. Furthermore, after several hours of

discussion with Judge Cahn it became clear to Plaintiff that Defendant's had simply used

the request to go to settlement  as a red herring for delaying and abrogating the discovery

process which Plaintiff's counsel Mr. Lamar was a willing participant. Furthermore

Plaintiff was shocked and chagrinned that Judge Cahn told her towards the end of the day

that" Judge Stengel does not like your case." Mr. Lamar agreed and stated "I am well

aware of it." If this is not [pressure], then Plaintiff would like to know what is. Since

Judge Cahn is a private mediator, ethics should dictate that he would have no contact

with Judge Stengel regarding the Plaintiff's private settlement conference. If Judge Cahn

did not have conversation with Judge Stengel then Mr. Lamar would be acting

unethically and adverse to his client's interests by sharing such knowledge with Judge

Cahn. On page 5 of Judge Perkin's Report and Recommendations, he states "I granted

permission for two different lawyers to represent her in the settlement conference before

me without requiring them to enter their appearance as counsel of record. This deviation

from the standard and appropriate procedures of this Court was for the Plaintiff's benefit

in an effort to reach an amicable resolution." Plaintiff now argues that this admission by

Judge Perkin buttresses her contention that throughout Plaintiff's entire case the Court

has deviated from standard and appropriate and established procedure and these

deviations have led to the Due Process violations that Plaintiff now prays for relief. In

Judge Perkin's own settlement procedures, he requires that before attending the

conference the Defendant must be prepared and authorized to meet the Plaintiff's last

demand. In this case that amount was $375,000.00, yet Defendant's never offered more

than $50,000.00 at the 3/22/10 settlement conference before Judge Perkin. Furthermore,

Plaintiff signed a contract will Ms. Thompson on 11/3/09 in which she promised to enter

her appearance on Plaintiff's behalf and this contract was presented to the Court in

Plaintiff's Counter-Response to Defendant's Omnibus Response to Plaintiff's motions of

April 9, 20010 as Exhibit 9-E6. In Plaintiff's 12/23/09 letter to Judge Stengel (Exhibit 12-

E5), she brought to the Court's attention the confusing situation that the Court had

allowed to develop regarding her counsel. Plaintiff brought to Judge Stengel's attention

an Email Ms. Thompson on 12/11/09 in which Ms. Thompson states that she "has no

official capacity to act on my (Plaintiffs) behalf."(Exhibit 12-E6 Email from Ms.

Thompson to Plaintiff dated 12/11/09). In Judge Perkin's Report and Recommendations, page 5, Judge Perkin states, "I did not handle any discovery matters in this case and certainly did not impede or stop discovery." Plaintiff once again would argue that one can draw inferences about intent through circumstantial evidence. It is evident from Mr. Connaughton's 9/30/09 letter to Mr. Lamar that their conversations with Judge Perkin on 9/30/09(1st telephonic settlement conference), that Judge Perkin did in fact handle a discovery matter. On page 2 of his letter, Mr. Connaughton states, "Based on our conversation with Judge Perkin of today, we have agreed to postpone the Detroit depositions pending your client's consideration of the Offer of Judgment." This grammatical construction clearly shows that Mr. Connaughton, Mr. Lamar and Judge Perkin have agreed to postpone the Plaintiff's Detroit Discovery. At this point Judge Perkin cannot possibly claim that he had no constructive knowledge of the Discovery cancellation  and that he took no constructive part in its cancellation.(Exhibit 9-E4 of Plaintiff's Counter-Response To The defendant's Omnibus Response To Plaintiff's Motions of April 9, 2010). In Judge Perkin's Report and Recommendations, he recommends that Plaintiff's Motion to Amend Complaint to Add Delivery of Adult Sexual Material to Plaintiff by Defendants on 9/15/09 at Plaintiff's Deposition, be denied. Plaintiff argues that to deny Plaintiff's motion would add delay to the disposition of Plaintiff's case as its denial would require Plaintiff to file a new complaint in federal court against the Defendants for the Intentional Infliction of Emotional distress caused by their intentional delivery of adult sexual material to Plaintiff in the discovery material proffered to Plaintiff in July of 2009, as well as their intentional delivery of adult sexual

material on 9/15/09 to Plaintiff at her deposition, as well as the intentional delivery of

alleged child explicit pornography to Plaintiff at her deposition of 9/15/09. It is germane

that defendant's questioned Plaintiff extensively, (without Mr. Lamar's objections) about

pornography and about photographs that Defendant's did not put before the Plaintiff at

her deposition, and about a pornographic book that Defendant's did not put before

Plaintiff at her deposition and Defendant's did not enter any exhibits regarding these

pornographic pictures into the record at Plaintiff's deposition. This fact alone shows that

Defendant's motive was to harass and shock Plaintiff rather than to argue legitimate facts

and carve out legitimate points of law on behalf of Defendant's. Plaintiff asserts that she

in fact suffered severe emotional distress from these intentional and callous acts of

Defendant's and plans to file a separate federal complaint if her Motion to Amend

regarding delivery of Adult Sexual Material and alleged Child Explicit Pornography to

Plaintiff by Defendant's On 9/15/09 at Plaintiff's Deposition is denied. In Judge Perkin's

Report and Recommendations, Judge Perkin recommends that Plaintiff's Motion to

Dismiss Ralph Lamar's Fee Lien (Docket 42) and Plaintiff's Amended Motion to

Dismiss Ralph Lamar's Fee Lien (Docket 47) should be denied as moot. Plaintiff asserts

that Mr. Lamar's Fee Lien Petition was vexatious and was timed to coincide with the

3/22/10 settlement conference held before Judge Perkin. By denying Plaintiff's motions

to dismiss Mr. Lamar's Fee Lien Petition, the Court would be allowing Mr. Lamar to

repair his deficiencies regarding his inappropriate and vexatious Fee Lien Petition.

Denying Plaintiff's motion to dismiss would reward Mr. Lamar by allowing him to

dictate whether his vexatious Petition is dismissed with or without prejudice. Plaintiff

prays that the Court will dismiss Mr. Lamar's Fee Lien Petition with Prejudice. Plaintiff

objects to Judge Perkin's Recommendation that her Motion to Amend Complaint to Add

Delivery of Adult Sexual Material be denied. If the Court denies Plaintiff's Motion to

Amend, Plaintiff would be needlessly remitted to the difficulties of commencing a new

action even though events occurring after the commencement of the original action have

made clear the right to relief. The right to serve an amended pleading once as of course is

common. 4 Mont Rev Codes Ann (1935) sec 9186; 1 Ore Code Ann (1930). If there is no

statute the power of the Court to grant leave is said to be inherent. Clark Code

Pleading(1928) pp 498,509. Compare former Equity rule 19 (Amendments generally) and

code provisions which allow an amendment "at any time in furtherance of justice". Ark

civil code (Crawford 1934) sec 155 which allows an amendment of pleadings to conform

to the evidence where the adverse party has not been misled and prejudiced (e.g.; NM

STAT ANN (Courtright,1929 sec 105-601, 105-602). Judge Perkin on page 7 of his

Recommendations  in Recommending that Plaintiff's motion to Amend to Add Delivery

of Adult Sexual Material, relies on David v. Crompton & Knowles Corp., 58 FRD 444,

447 (ED. Pa. 1973). In David v Crompton "the delay would have been highly prejudicial

to the Plaintiff, since the plaintiff would now be barred by the statute of limitations from

instituting this action against another party. To allow an amendment here would penalize

the plaintiff, who is without fault and leave him with no remedy." In Funayama v Nichia

America Corp. the facts surrounding Plaintiff's Motion to Amend are completely

different and Judge Perkin can find no valid ground on which to deny Plaintiff's motion

to Amend.  In David v Crompton the Synopsis of Rule of Law does not apply in

Funayama's instant case. David v Crompton says a motion to amend should be denied if the plaintiff would be prejudiced and the defendant was aware of this information prior to filing his answer. Clearly David v Crompton does not apply in Funayama's instant case and if the Court denies Plaintiff Motion to Amend this would be abuse of discretion.

Furthermore, Judge Perkin's reliance on United States v. E. B. Houghham is equally misplaced. Allowing Plaintiff Funayama to Amend her complaint to Add Delivery of Adult Sexual Material and Child Pornography would not result in prejudice to the Defendant's since they in fact delivered the Adult Sexual Material and they in fact delivered the alleged Child pornography. Furthermore Plaintiff alleged in her original complaint that Defendant's had delivered Adult Sexual material to her on numerous occasions in the work place and the subsequent delivery of Adult Sexual Material to Plaintiff during her deposition speaks directly to the merits of her case. As outlined in U.S. v Houghham, 364 U.S. 310,317, 81 S. Ct. 13, 5 L. Ed. 2d 8(1960), The applicable rule is rule 15 of the Federal Rules of Civil Procedure, which was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result. Despite Judge Perkin's argument to the contrary, this case is one where there plainly is no such prejudice. In such a situation, acceptance of Judge Perkin's contention on this point would subvert the basic purpose of the Rule. " The federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 355 U. S. 48. Plaintiff therefore

concludes that under the circumstances of her instant case that she has the right to amend

her pleadings and that this Court would err in refusing to permit such amendment. Lastly

on the issue of Plaintiff's Motion to Amend to Add Delivery of Adult Sexual Material,

Judge Perkin relies on Albee Homes, Inc. v. Lutman, 406 F. 2d 11, 14 (3d Cir. 1968).

Plaintiff Funayama asserts that Albee Homes v. Lutman underlying facts and holding do

not help Judge Perkin's argument that Plaintiff's Motion to Amend to Add delivery of

Adult Sexual Material should be denied. In Albee the plaintiff's waited over three years

to raise their issue and then did so only when the trial was minutes away, even though

they made no claim that the defense was not known to them from the start. Plaintiff

Funayama asserts that Judge Perkin cannot find undue delay in her underlying facts or

circumstances except perhaps undue delay on the part of the Court. Plaintiff relies on

Rule 15(a), F.R.C. P., and the decision of the Supreme Court in Foman v. Davis, U.S. 178,

83 S. Ct. 227, 9 L. Ed. 2d 222 (1962), for the proposition that amendments to pleadings

should be "freely given. Plaintiff contends that to date she has not been the source of any

delay. Plaintiff contends that the delays lie squarely on the shoulders of Defendant's and

Mr. Lamar and the Court for failing to allow Plaintiff's case to move forward to its

logical conclusion in a trial before a jury. Plaintiff argues that there exists no undue delay,

no bad faith, or dilatory motive on the part of movant, no repeated failure to cure

deficiencies by amendments previously allowed, no undue prejudice to the defendant's

by virtue of allowance of the amendment, no futility of the amendment, --the leave

should, as the rules require, be freely given."Finally Plaintiff will issue and discuss her

objections to Judge Perkin's Recommendation that the Court Deny Plaintiff's Motion to

Request Preliminary Hearing on Child Explicit Material that was delivered to plaintiff at

her 9/15/09 deposition by the defendant's. In this instant case the Defendant's NAC and

Shigeo Kuboniwa delivered and transferred to Plaintiff without Plaintiff's knowledge

Adult Sexual material and what Plaintiff believes to be Child Pornography on two

separate distinct occasions subsequent to Plaintiff's filing of her Complaint in this instant

case. The first such delivery and transfer of adult sexual material took place in July 2009

when Defendant's delivered to Plaintiff within discovery material, pictures which were

pornographic (Nichia's Document Production package NAC0844-0847). Plaintiff argues

that Defendants believed these pictures to be pornographic due to the fact that on 9/15/09

at Plaintiff's deposition Defendants' counsel Mr. Connaughton questioned Plaintiff at

length about   these delivered pornographic pictures that Plaintiff had received in the July

2009 discovery package from Defendant's. Mr. Connaughton questioned Plaintiff about

these pictures that she remembered receiving from Defendant's in July 2009 yet Mr.

Connaughton did not present any pictures to the Plaintiff while he questioned her. Mr.

Lamar remained silent, with no objection on his part. Throughout his questioning of

Plaintiff, Mr. Connaughton referred to pornography during his examination and

questioning of Plaintiff. It is patent from Mr. Connaughton's line of questioning (Exhibit

12-E7 Plaintiff's Deposition on 9/15/09), that Defendant's viewed these sexual photos as

pornographic. The second time that Defendant's delivered Adult Sexual material and

alleged Child Pornography to Plaintiff without her knowledge was on 9/15/09 at

Plaintiff's deposition held at H.U.B. Law firm in Lancaster, Pa. A box was hand

delivered and presented to Plaintiff by Defendant Shigeo Kuboniwa who had traveled

across state lines  with the express purpose of delivering to Plaintiff both Adult Sexual

pornography and one example of alleged Child Explicit Pornography. It is notable that

after extensively questioning Plaintiff regarding pornography and specifically

pornographic pictures which defendant's had previously delivered and transferred to

Plaintiff without her knowledge in July 2009 within discovery material, Defendant's

failed to enter any such pornographic pictures as exhibits in this instant case. It is further

notable that Mr. Connaughton questioned Plaintiff about a book of which she knew

nothing, while the "BOOK" was lying within inches of the parties in the BOX which had

been delivered and transferred by Defendant Kuboniwa to the Plaintiff that very morning.

After delivering and transferring the BOX containing this Adult Sexual Pornography and

alleged Child Explicit pornography to Plaintiff, Defendant Kuboniwa immediately

returned to Japan. At this juncture, Judge Perkin has recommended in his Report and

recommendations that Plaintiff's Motion to Request Preliminary Hearing on Child

Explicit Material Sent by Defendant's be denied. On page 8 of Judge Perkin's Report he

states " As best can be determined, it appears that Plaintiff is requesting a hearing, in

advance of trial, to permit the Court to rule on the admissibility of certain evidence."

Judge Perkin further states "there appears to be no reason for such a hearing." And that

"the Court will be able to rule on any objections to evidence offered by any party at the

time of trial." It is certain that the Defendant's will object to the admissibility of the

Adult Sexual Pornography and the alleged Child Explicit Pornography that they

purposefully delivered and transferred to Plaintiff on 9/15/09 in violation of Pub. L 108-

21, 117 STAT 650, S 151 codified at 18 U.S.C. sec 2252(B). In Supreme Ct's Justice

Stevens, J. concurring in United States v. Williams 553 U.S.(2008) Supreme Court of the United States No. 06-694 States, ("[T]he bill criminalizes the pandering of child pornography, creating a new crime to respond to the Supreme Court's recent ruling [in Ashcroft v. Free Speech Coalition 535 U.S. 234 (2002)]" ( statement of Sen. Leahy, bill's cosponsor)); H.R.Conf. Rep. no 108-66, p.61 (2003) ([T]he Bill) includes a new pandering provision...that prohibits advertising, promoting, presenting, distributing, or soliciting... child pornography". Justice Steven's goes on to say "the dissent argues that the statute impermissibly undermines our First Amendment precedents insofar as it covers proposals to transact in Constitutionally protected material. It is true that proof that a pornographic but not obscene representation did not depict real children would place that representation on the protected side of the line. But any Constitutional concern that might arise on that score are surely answered by the construction the Court gives the statute's operative provisions; that is, proposing a transaction in such material would not give rise to criminal liability under the statute unless the defendant actually believed, or intended to induce another to believe, that the material in question depicted real children. In this instant case of Tomoko Funayama v. Nichia America Corporation, and Shigeo Kuboniwa, Defendant Kuboniwa delivered, transferred and presented alleged Child Pornography to the Plaintiff with full knowledge that the delivered, transferred and presented material contained a depiction of a naked child with a lascivious display of the genitals. Even though the depiction in question of the naked child was not delivered, transferred and presented with the July 2009 discovery materials that were sent to Plaintiff, the depiction in question of the naked child was numbered as were the other

pictures and was delivered, transferred and presented to Plaintiff at her deposition on

9/15/09. Supreme Court Justice Scalia in his opinion states," The new statute punishes

the pandering, solicitation and transferring of material purported to be child pornography,

even if it is not child pornography or if no material exists at all." Under this new "Child

Protection Act  (1)" it is a crime for any person to knowingly advertise, promote, present,

distribute or solicit any material or purported material in a manner that reflects a belief or

is intended to cause another to believe that the material or purported material is or

contains child pornography. (2) The key verbs; advertises, promotes, presents, distributes

or solicits are reasonably read to have transactional connotations, that is to say that the

transfers can be for free. (3) "in a manner that reflects the belief " means that defendant

has a subjective belief that the material or purported material is child pornography, and

his statements or actions make the listener believe that the material is child pornography.

(4) In a manner that causes others to believe that the material or purported material is

child pornography. (5) Sexual conduct depicted must reach a high level of explicitness.

The statute does not prohibit truthful speech about lawful material. Plaintiff asserts that

since Defendant Kuboniwa presented and transferred this alleged contraband to Plaintiff

at her deposition on 9/15/09 that the Court now must hold a hearing, not to rule on the

admissibility of certain evidence, as Judge Perkin suggests on page 8 of Judge Perkin's

Report and Recommendations, but to determine if the depiction at question of the naked

child is in fact contraband under "The Child Protection Act".  If this Court fails to act in

this regard Plaintiff asserts that this Court will be failing to uphold the laws that Congress

enacted. Plaintiff now relies on this Honorable Court to protect her by holding a hearing

to determine if the alleged contraband is in fact contraband and if the Court rules that it is

not, then the Defendant will be vindicated that the material that they presented to Plaintiff

was not contraband. Furthermore, Defendant's would have far more protections available

at a hearing regarding the presentation of the alleged contraband than they would be

afforded at a deposition on this matter. Furthermore on 9/15/09, Defendant's counsel

presented Plaintiff with extensive questions and inferences that pictures that Defendant's

had previously presented to Plaintiff in the July 2009 discovery material, was

pornographic. On 9/15/09 at her deposition, a box was presented to Plaintiff which when

opened later at Plaintiff's Lancaster, Pennsylvania home was found to contain what

Plaintiff believes and was led to believe by Defendant's actions and statements, Child

pornography. Since Plaintiff subjectively believes that the material presented to Plaintiff

by Defendant Kuboniwa on 9/15/09 contains Child Pornography, the material in question

is deemed to be Child Pornography. This remains a rebuttable presumption until a

hearing is held to determine whether the presumed and purported Child pornography is in

fact obscene contraband. If anyone were to say, "let me see it", this would be solicitation

and would run afoul of the statute. Speech proposing an illegal transaction is not

protected, so Plaintiff cannot propose even transferring it for free to someone. The

depiction in question is either contraband or it is not. It is either within the reach of the

statute or outside the reach of the statute. It is on the protected side of the line or on the

unprotected side. Only the Court can decide which applies. Because the Defendant has

presented Plaintiff with material that their actions and statements have led her to believe

subjectively that the material contains Child pornography, the Court has no choice but to

hold a hearing to determine whether the material presented by Defendants, falls in or

outside of the reach of The Child Protect Act.  If this Court does not hold a hearing to

decide this question, it will err in law and abuse its discretion. Plaintiff believes that this

would be overturned on appeal.

Respectfully submitted,

By: _____
Tomoko Funayama, PRO SE
Plaintiff

Dated: June 14, 2010

Civil Action No. 08-CV-5599 Document _12_ Filed 6/14/10 Page 21 of _21_

## CERTIFICATE OF SERVICE

08-CV-5599

I , Tomoko Funayama, hereby certify that this the 14th day of June, 2010, I caused a true and correct copy of Plaintiff's Objections to Judge Perkin's Report and Recommendations to be served today by First Class Mail upon counsel for Defendants at the address below:

Rory O. Connaughton
Hartman, Underhill, & Brubaker, LLP
221 E. Chestnut Street
Lancaster, PA 17602-2782

By: _____
Tomoko Funayama, PRO SE
Plaintiff