Civil Action No. 08-CV-5599

Tomoko Funayama
112 N. Main Avenue
Sylacauga, AL 35150
Telephone: 717-368-2406
Email: funtoma29@hotmail.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CIVIL ACTION NO. 08-CV-5599

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITIONTO DEFENDANTS' MOTION TO STRIKE EXHIBITS OR, IN THE ATERNATIVE, RE-OPEN DISCOVERY AND LEAVE TO FILE REPLY TO PLAINTIFF'S MOMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**1.** Plaintiff Tomoko Funayama hereby files this memorandum for the purpose of raising critical questions and issues as a result of Defendants' Motion to Strike Exhibits or, in the alternative, re-open discovery and for leave to file reply to Plaintiff's memorandum of law in Opposition to Defendants' Motion for Summary Judgment. During the discovery, Defendants' claimed that they produced 1,200 pages of documents to Plaintiff. Such 1,200 pages of documents hardly represent any relevancy to Plaintiff's claims. They were "junk" such as Xerox copies of Nichia America's group benefit policy pages that had no bearing to the case. Rather it was serving to fill up the volume so the Defendants could say that they produced voluminous documents.

**2.** Defendants' counsel Mr. Rory Connaughton said during the telephone conference with Honorable Judge Stengel and Plaintiff Funayama on 10/28/2010 that he (Mr. Connaughton) had literally taken possession of Plaintiff's hard drive from Nichia America and went through every thing that Plaintiff left behind her in her office at Nichia America prior to her last employment date in July 2008. Every exhibit entered by

1

Plaintiff except the newly discovered E-2 visa applications and support letters, Exhibit P1 were in the possession of Ralph E. Lamar, Plaintiff's original counsel, as well as in the possession of Defendants as they were in exclusive control of Plaintiff's hard-drive that contained all of the exhibits and documents that Plaintiff has proffered. Furthermore, Plaintiff's ex-counsel would have proffered these documents as discovery documents. In lieu of striking the Exhibits in question, the Defendants state they will be seeking to obtain certified translations of e-mails submitted by Plaintiff and incorrectly translated.

3.  There is a double-standard in their statement. First of all, Defendant Shigeo Kuboniwa is capable of "effectively communicating in English" (see Defendants' Motion for Protective Order Doc# 64, 9/17/2010, page 2 paragraph#7) therefore Mr. Kuboniwa should be able to evaluate the translation provided by Plaintiff. In addition, in his deposition on 9/21/2010, Mr. Kuboniwa stipulated numerous times that he accepted Plaintiff's translations to be accurate. It is obvious from the very beginning of the case that Mr. Connaughton would have required English translation of every Japanese email that was found on Plaintiff's hard-drive. There is no possible scenario that can be articulated that would render these Japanese Emails as "surprise." Defendants would have spent substantial hours to evaluate Plaintiff's Emails and files therefore nothing would have been surprise to them. What Plaintiff has produced is what Defendants already have had in their possession. There is nothing new under the sun.

4.  The computer generated diary mentioned by Defendants is not identified by Defendants so Plaintiff cannot comment as Plaintiff entered several extemporaneous diaries. Plaintiff is a material witness to this case therefore she can produce her own diary as material evidence.

2

**5.** Furthermore, Defendants had requested production of material during the initial discovery period in 2009 to include any diary, memo, record, meeting minutes, etc. Now, by saying that a diary is not acceptable, Defendants are contradicting themselves.

**6.** By seeking to authenticate Plaintiff's diary, Defendants are trying to invade Plaintiff's privacy by asking for Plaintiff's home computer hardware and software that she shares with her husband and their adult children. If the Court grants this permission to the Defendants, the Plaintiff will seek for the same investigation against Defendants Nichia America and Shigeo Kuboniwa.

**7.** It appears that Defendant wanted as much evidence as possible from Plaintiff but when they are presented to them, they complain about the contents of it.

**8.** Defendants had all the evidences presented in Plaintiff's Exhibits, in their possession because all of the exhibits (except for the deposition records) came from the office of Nichia America and/or Nichia Japan. It is impossible for Plaintiff to possess the company information while her employer both Nichia America (and now Nichia Japan as well) and Shigeo Kuboniwa didn't. There is no logical explanation otherwise.

**9.** Defendants are alleging that Plaintiff operates in "bad faith" (Defendants' Motion Doc. 92 page 5, line 2). Plaintiff would like to remind this Court that Defendants have concealed vital information to Plaintiff's employment status and many facts relevant to this case. Defendants deserve sanctions to be levied by the Court.

**10.** Plaintiff's Economic Damage Calculation Worksheet is simply a support document to work in concert with Plaintiff's demand for relief of economic damages.

**11.** Plaintiff reminds Defendants that Rule 37(c) Failure to Disclose applies in this instant case to Defendants not to Plaintiff. Defendants cannot be surprised by anything

that Plaintiff offers as Exhibits and evidences since they admit that they had exclusive control of Plaintiff's company hard-drive upon her construciutve discharge.

**12.** Defendants now come and try to strike all the exhibits entered by Plaintiff on 10/12/10 at Defendant Kuboniwa's discovery deposition. This is clearly and end-run around the Federal Rules of evidence as all of the exhibits that Plaintiff has entered or submitted at the discovery depositions of Tae Kim, Dan Doxsee, Brian Marshall, and Shigeo Kuboniwa, save a few Emails that Plaintiff entered as a response to false statement made by Defendants in their motion for summary judgment, were entered during Discovery. There are several errors in Defendants statement. Defendants lists several exhibits in their listing of "Plaintiff's Exhibits Not Produced During Discovery", however, **Exhibit No. 1 E-mail from Kuboniwa to Funayama re: US Corp. Tax Return was presented during Kuboniwa deposition on 10/12/2010 and argued its translation. Exhibit P12-0 Organization Chart dated 6/30/2008 was Emailed from Mr. Connaugton to Plaintiff on 10/11/2010 after Plaintiff complained that Defendants had failed to execute their promises made during 9/20-21/2010 depostions. In addition, Exhibit 1L Email from Dan Doxsee dated 9/16/06 re: Harassment training along with BOSCH Harassment Policy, 1N Email from Dan Doxsee dated 5/1/07, 1O E-mail from Dan Doxsee dated 5/29/07 were not produced by Nichia but they were produced by Plaintiff during the discovery, specifically on 10/12/2010.**

**13.** Once again, these few emails were already in the possession of the Defendants as they were proffered to them by Ralph E. Lamar and the Defendants had all the Emails in their possession and exclusive control over them, since these were company Emails and

4

documents that were held on their server and in Plaintiff's hard-drive which Mr. Connaughton has admitted, he commandeered upon Plaintiff's constructive discharge. When Judge Stengel reopened discovery he set a deadline of 9/27/2010. Plaintiff was ready to complete the discovery on 9/22/2010, but for Mr. Connaughton's failure to make himself and Defendant Kuboniwa available as he had promised in his Email dated 9/9/2010 (see attached). Mr. Connaughton told Judge Stengel in the phone conference on the day of Kuboniwa's first deposition of 9/21/2010, that Mr. Connaughton had scheduled only 9/20/2010 and 9/21/2010 for depositions. This was a clear misrepresentation as Mr. Connaughton's Email dated 9/9/10 reflects (attached).

14. In addition, according to Article IV, Rule 401, Federal Rules of Evidence, **"Relevant evidence" means evidence having tendency the make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence**. Furthermore, under the Federal Rules of Evidence, Plaintiff is not obligated to seek for leave to enter as evidence, any documents or regulations of the U.S. government. Plaintiff entered **US State Travel website re: Cuba (Exhibit 24), USCIS Right and Responsibilities of Permanent Resident (Exhibit 26), USCIS's E-2 Visa General Qualifications (Exhibit P48), and Plaintiff's E-2 visa applications in the form of federal forms and its supported documents that had been already submitted to the government (Exhibit P1)**. All exhibits that Plaintiff entered had direct relevance to her claims.

15. Plaintiff further attaches excerpts from Kuboniwa's 9/21/2010 discovery deposition to allow the Court to fully appreciate and reflect upon the confusion and delay caused by Mr. Connaughton's obstructive handling of the numerous Japanese Emails and

documents presented in Japanese for Defendants to respond. (See attachments pages 28, 30, 33, 36, 37, 39, 45-1, 45-2, 47-1, 47-2, 54, 58, 59, 60, 61, 62, 63, 68, 70, 72, 73, 76, 77, 78, 78, 80, 81, and 82). In these attached excerpts, Kuboniwa stated several times that he wishes to accept the translations of Plaintiff. Furthermore, on page 73, lines 9 – 13, Kuboniwa prefers to use Plaintiff's translations. In addition, on page 73 lines 19 to 21, Mr. Connaughton states "We will be obtaining our own translations" and Kuboniwa states *"to me it doesn't matter"* Plaintiff reminds the Court that Mr. Connuaghton has had almost 2.5 years to translate all of the Emails and documents that Defendants would have found in Plaintiff's hard-drive and that the Defendants had in their files and on their servers that directly relate to Plaintiff's claims. There simply is no excuse to say, at this late date, that they need to research and translate Plaintiff's Emails and to claim incredibly that they have never seen them before.

**16.** On page 60, line 20-22, Mr. Connaughton states *'You have translated it yourself, Ok, which is fine."* On page 61, Mr. Connaughton states line 18-21, *"we may not accept that the translation is accurate, but we may accept that the translation is accurate."* On page 72, Defendant Kuboniwa states, on line 5 *"whatever you (Plaintiff) translates, I accept"* On page 77 line 5-6, Mr. Connaughton insults his client and asks *"Do you understand what it means in Japanese?"* A. *"Of course."* On page 78 line 11-12, Kuboniwa states *"please; you have better English than me, so, whatever you correct, that's fine."* On page 79 line 8-9, Kuboniwa states *"in this sentence that's not correct, but you translate."* On page 78 to 80, Kuboniwa translates an Email from Japanese to English that states that **Funayama's presence is critical in Pricewaterhouse Coopers' internal control tests**. It is patent that Plaintiff was the key member of Nichia America's

accounting department. During the second discovery deposition of Kuboniwa, Mr. Connaughton violated F.R.Civ.P. Rule 30 by instructing Kuboniwa not to answer Plaintiff's questions (see pg.14 Kuboniwa dep. 10/12/2010 attached). On page 16 of Kuboniwa dep. 10/12/2010 Mr. Connaughton derides Plaintiff because she wishes to ask Kuboniwa if he agrees with portions of her diary entries which Defendant's had demanded that she proffer to them.

17.   On page 20-21 Kuboniwa dep. 10/12/2010 Mr. Connaughton is clearly obstructing Plaintiff questioning of Kuboniwa and only this tactic only subsides when Plaintiff asked for a phone conference with Judge Stengel. On page 22-25 it is clear that Mr. Connaughton was misrepresenting Plaintiff's exhibits to Judge Stengel, such as when he on page 23, lines 5-8 he states that many of the 53 documents appear to be memoranda prepared by Ms. Funayama. On page 25, lines 21-25, Judge Stengel admonishes Mr. Connaughton, "***Yes, you are entitled to lodge the objection. But unless it's a matter of privilege or a troublesome form of the question, you can't direct him not to answer. He can do the best he can. Mr. Connaughton: I understand that.***" However, on page 69 of Kuboniwa dep. 10/12/2010, lines 23-24 and page 70, lines 5-6 Mr. Connaughton directs Kuboniwa not to respond to Plaintiff's direct and clear questions.

18.   Either Mr. Connaughton has a short memory, like his client Kuboniwa, or he simply does not care about the admonitions of Article 3 Federal Judge.

19.   On page 41-42 Mr. Connaughton interfears with Plaintiff's questioning and clearly is coaching his client regarding his answers to Plaintiff's questions. Once again, on page 43, line 22, Kuboniwa demands that Plaintiff translate for him, to the extreme consternation of Mr. Connaughton.

7

20. On page 44-45, Mr. Connaughton uses his all too familiar arranged "code words," thrown in when he wants his client to stop answering questions posed to him by the Plaintiff. He demands, page 44, lines 7-10, "*Mr. Kuboniwa, if you can translate this, then you can translate it. If you can't translate it, then you can't translate it. But you cannot ask for assistance from Ms. Funayama.*" Here it is clear that Mr. Kuboniwa had tired of being a puppet of Mr. Connaughton, as he ignored Mr. Connaughton and clearly continued to answer Plaintiff's questions. Incredibly, even though the record is crystal clear on what Mr. Kuboniwa's testimony was, Mr. Connaughton on page 45, lines 7-8, objects and states "*That's not what Mr. Kuboniwa testified to.*"

21. More bizarre interruptions by Mr. Connaughton follow as on page 50, lines 22-24 where Mr. Connaughton states, "*If you can understand the Japanese, tell us what you think it means in Japanese.*" Has Mr. Connaughton forgotten, that his client Mr. Kuboniwa is a Japanese national whose first and native language is Japanese?

22. On pages 52-59, Plaintiff questions Kuboniwa about the Nichia world wide organizational chart, with no objections made by Mr. Connaughton. Plaintiff had asked Kuboniwa to proffer the world wide organization chart in his 9/21/2010 discovery deposition. Mr.Kuboniwa promised to produce it to Plaintiff, but failed to do so. Despite the failure to produce, on page 52, line 24 Kuboniwa asks Plaintiff, "*Why do you have this?*"

23. On page 53 and 54 it is clear from Mr. Kuboniwa's testimony that Nichia Japan and Nichia America purposefully withheld this document from Plaintiff, and that both did not want her to have access to it. On page 60 line 19 and line 23, Plaintiff meant to say

Nichia Japan, even though she was properly corrected by Mr. Connaughton on line 22, when he questioned: *Of Nichia America ?*

24. On page 67, lines 19-24 Mr. Kuboniwa admits that he illegally traveled to Cuba while he was the holder of a Green Card. On page 68, Kuboniwa dep.10/12/2010, lines 12-14, Mr. Connaughton once again cannot follow Judge Stengel's admonition, and states,"*I'm instructing him not to answer. If you want to call the judge, you go ahead and call the judge.*"

25. On page 99, line 14, Mr. Connaughton commands Mr. Kuboniwa "*Read it in Japanese.*" There is simply no explanation to Mr. Connaughton's command, since his protective order, granted by Judge Stengel on 9/20/2010 prohibited testimony by Kuboniwa in his native language, Japanese.

26. On page 119, lines 14-23, in answer to Plaintiff's question, what constitutes sexual harassment?, Kuboniwa answers "I *don't remember*", then answers, "*I don't know*" at which time Mr. Connaughton interrupts with his all familiar "code words," "**Do you** *understand the question?*," to which Kuboniwa answers, "*Yes, I know.*" Continuing on page 120, lines 22-24, Mr. Connaughton commands, "*Do you understand the question?*" when he does not want Kuboniwa to answer Plaintiff's clear question. In attachments page 167, 168, 169, 170, 171, 172, and 173, these deposition testimony pages, it is patent that Mr. Connaughton used Rule 68 Offer of Judgment without Defendants knowledge. That was unethical.

27. Page 167-173, when examined carefully, they show Mr. Connaughton trying to conceal this fact. Tae Kim's discovery deposition testimony on 9/20/2010, clearly conflicts with Kuboniwa's testimony of 9/21/2010. Tae Kim testified that she had no

signing authority during Judge Perkin's 3/22/2010 settlement conference. Once again, between Tae Kim's discovery testimony of 9/20/2010 and Kuboniwa's discovery testimony on 9/21/2010, an essential part of Defendant Kuboniwa's and Mr. Connaughton's discussions would have centered around a tacit agreement or understanding that Kuboniwa would lie about Ms. Kim's signing authority at his upcoming discovery deposition to be held the following day.

28. This clearly once again involved obstruction of justice and subornation of perjury on the part of Mr. Connaughton. Plaintiff believes that this apparent contrived machination on the part of Defendant's to once again cause confusion and delay, only serves to highlight the fact that they lack the facts and law to win their case.

29. Plaintiff suggests that Defendant's "hold them' or "fold them". The truth has surfaced and the Defendant's are clearly unwilling to accept the obvious. The Court should rather apply F.R.Civ.P. 37 to Defendants for their failure to make disclosures and for the abject failure to cooperate in the discovery process and possible intentional spoliation of the evidence, especially on Plaintiff's employment documents and detail discussion leading to her termination, both elimination of the position in conjunction with Mountville plant closure and the constructive discharge upon Plaintiff's filing of EEOC/PHRC complaints.

By: _____

Tomoko Funayama, Plaintiff, Pro Se

Dated: December 23, 2010

# CERTIFICATE OF SERVICE

08-CV-5599

I, Tomoko Funayama, hereby certify that this 23nd day of December, 2010, I caused a true And correct copy of:

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITIONTO DEFENDANTS' MOTION TO STRIKE EXHIBITS OR, IN THE ATERNATIVE, RE-OPEN DISCOVERY AND LEAVE TO FILE REPLY TO PLAINTIFF'S MOMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

to be served today by First Class Mail upon counsel for Defendants at the address below:

Rory O. Connaughton
Hartman, Underhill, & Brubaker, LLP
221 E. Chestnut Street
Lancaster, PA 17602-2782

By:_____
Tomoko Funayama, *Pro Se*
Plaintiff